## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ISABELLA WYSOCKI, JAMES WYSOCKI, and RACQUEL WYSOCKI,**<br><br>**Plaintiffs,**<br><br>   v.<br><br>**THE WARDLAW-HARTRIDGE SCHOOL, CHRISTINE CERMINARO, ROBERT M. BOWMAN, ANDREW WEBSTER, AUSTIN FORSYTHE, WAGNER COLLEGE, NADIA VALCOURT, JOHN DOES 1-10, and JANE DOES 1-10,**<br><br>**Defendants.** | Civ. No. 2:21-cv-14132 (WJM)<br><br><br>**OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.

In January of 2021, Plaintiff Isabella Wysocki ("Wysocki") was a senior high school student at The Wardlaw-Hartridge School when a video clip circulated of her using a racial epithet. The school disciplined Wysocki, and she was not permitted to attend in-person classes or activities for the remainder of the academic year, nor walk in the graduation ceremony. Wagner College, where Wysocki had signed a National Letter of Intent to play for the college's soccer program, likewise rescinded its offer of admission and scholarship. Wysocki, along with her parents Plaintiffs James and Racquel Wysocki (collectively, "Plaintiffs"), bring a variety of claims related to the imposed disciplinary actions, alleging that The Wardlaw-Hartridge School, certain of its administrators, and Wagner College failed to properly investigate the incident, the video clip's source, and the motive behind its circulation. Plaintiffs also name as defendants two students alleged to have disseminated the clip.

This matter is now before the Court on two motions: a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Wagner College, ECF No. 12, and a motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed by The Wardlaw-Hartridge School and its administrators, Defendants Christine Cerminaro, Robert Bowman, and Andrew Webster. ECF No. 28. For the reasons set forth below, Wagner's motion is **GRANTED** and Wardlaw and its administrators' motion is **GRANTED IN PART and DENIED IN PART**.

## I.    BACKGROUND

The following version of events is derived from Plaintiffs' Amended Complaint and the exhibits referenced therein and attached thereto.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  For the purposes of resolving the instant motions, the Court is bound to accept Plaintiffs' factual allegations as true and view them in the light most favorable to Plaintiffs.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

### A.  The Video Clip

Wysocki, age nineteen, is a former student of The Wardlaw-Hartridge School ("Wardlaw"), a private school in Edison, New Jersey, where she attended ninth through twelfth grade. Am. Compl. ¶¶ 4, 5.  She had been accepted into Wagner College ("Wagner" or the "college") in New York and had signed a National Letter of Intent ("NLI") to play on the college's soccer team.  *See Ex. 20, Am. Compl.*

In her senior year at Wardlaw, a video clip of Wysocki using a racial epithet was circulated and brought to the attention of Wardlaw and Wagner administrators.  The Complaint omits any restatement or complete description of the video's contents or of Wysocki's exact remarks, but the allegations and exhibits suggest the video is a two-second clip, recorded approximately two years prior to it being circulated, of Wysocki using the n-word.[1]  Wardlaw student Defendant Nadia Valcourt ("Valcourt") emailed the video clip to Wagner's Director of Admissions and the head coach of its soccer program on January 3, 2021.  Am. Compl. ¶¶ 11, 14(d).  Three days later, the video clip was posted on an Instagram account called "Wardlaw Uncensored" and then deleted after a few hours.  *Id.* ¶ 14(a)-(c).  Wardlaw student Defendant Austin Forsythe ("Forsythe") participated in creating the account or posting the clip.  Another student had overheard Forsythe months prior saying that he was going to sabotage Wysocki with the video.  *Id.* ¶¶ 10, 14(b) and (f).  On or about January 7, Wysocki and her parents filed an Incident Report with the Edison Police Department stating that Wardlaw students were harassing Wysocki by circulating the video.  *Id.* ¶¶ 16, 37; Ex. 4, Am. Compl.

### B.  Wardlaw's Investigation

Wardlaw, through its administrators, Defendants Christine Cerminaro, Robert Bowman, and Andrew Webster, met with or spoke to Wysocki and her parents several times about the video clip over the next three months.  *See Am. Compl. ¶¶ 13, 15, 17, 21,*

---

[1] Wagner submitted to the Court, as an exhibit to its motion to dismiss, a USB flash drive containing a copy of the video clip file that Wagner received via email.  *See* Bartolomeo Cert. ¶ 2, ECF No. 12-1.  As a motion to dismiss tests only the legal sufficiency of the pleading, however, the Court does not consider or make any determination as to the video's contents at this juncture.

28.  On one occasion, Wardlaw questioned Wysocki over Zoom and recorded it but did not notify her parents.  *Id.* ¶¶ 13, 15.  On another occasion, Wardlaw required Wysocki to appear before a "Judging board" comprised of teachers and students but did not allow her parents or her lawyer to attend the hearing.  *Id.* ¶¶ 21, 25.  Wardlaw did not investigate or hold a similar hearing for Forsythe, Valcourt, or any other students suspected to be involved with circulating the clip, despite Plaintiffs' complaints to administrators that Forsythe and other students were bullying and harassing Wysocki.  *Id.* ¶¶ 17-18, 21.  Wardlaw also did not investigate the video clip's authenticity, despite Plaintiffs expressing to administrators that the clip appeared to have been doctored or fabricated.  *Id.* ¶¶ 20, 30.

Wardlaw's investigation culminated on March 7, 2021, when it sent Wysocki a formal letter detailing its findings and explaining its decision to discipline her.  *Id.* ¶ 30.  A portion of the letter states:

> Two years ago, you should have known better than to use that profanity and racial epithet in the AP room (or anywhere else for that matter).  Now, as a senior, you should have known once it was posted that you needed to immediately come forward to an advisor, counselor, or administrator to acknowledge that the video was real, that your words were hurtful and unacceptable.  You should have expressed deep contrition, and a desire to apologize meaningfully and repair the harm it caused.

*Id.* ¶¶ 31, 35; Ex. 22, Am. Compl.  Finding that she did not do so, that she "fail[ed] to be truthful with the Judiciary Board," and that she had "belatedly taken responsibility and expressed the desire to learn and make amends," Wardlaw imposed certain disciplinary sanctions on Wysocki, but did not expel her.  Ex. 22, Am. Compl.  Wardlaw prohibited Wysocki from attending her classes, school events of any kind, and her graduation ceremony; gave her assignments to complete from home with an altered set of academic requirements; and required her to see a therapist.  *Id.*  If she satisfied these conditions, Wardlaw would issue her diploma at the end of the school year.  *Id.*  Wardlaw and its administrators penalized Wysocki in other ways throughout the rest of the school year by withholding her honors and awards and delaying the release of her transcript and letters of recommendation for college applications.  Am. Compl. ¶¶ 39, 64.

## C.  Wagner's Investigation

On March 12, 2021, several days after Wardlaw issued its disciplinary letter, Plaintiffs videoconferenced with a Wagner administrator and the head of Wagner's soccer program to discuss the video.  *Id.* ¶ 59.  Wagner emailed Wysocki on March 19 and again on March 22, notifying her it was rescinding her Athletics Award Agreement and voiding the NLI "due to her engaging in serious misconduct."  Am. Compl. ¶ 61; Ex. 20, Am. Compl.  Specifically, "[d]uring the course of [their] meeting on Friday, March 12th, [Wysocki] admitted to using a racial epithet and that it was her in the video."  Ex. 20, Am.

Compl.    According to Plaintiffs, Wagner reached its decision without "an in-depth investigation of the facts" or "a proper investigation on the reliability of the information provided by the Wardlaw connected sources, the motives of the sources, their bias, interest, and corruption."  Am. Compl. ¶ 78.

## II.   PROCEDURAL HISTORY

In light of the foregoing events, Plaintiffs commenced this action in the Superior Court of New Jersey, Union County, Law Division, on July 13, 2021.  Notice of Removal ¶ 1, ECF No. 1.  Defendants Wardlaw, Christine Cerminaro, Robert Bowman, and Andrew Webster (collectively, the "Wardlaw Defendants") timely removed the case, invoking this Court's federal question jurisdiction over the action by virtue of Plaintiffs' federal cause of action under Title VI of the Civil Rights Act of 1964.  *Id.* ¶¶ 7, 10.  The Complaint, as amended, asserts the following twelve claims:

Count I: as to Wardlaw, breach of contract, based on the alleged breaches of Wysocki's enrollment contract and the school handbook;

Count II: as to the Wardlaw Defendants collectively, violations of Article 1, Paragraph 6 of the New Jersey State Constitution, based on the alleged infringements of Wysocki's rights to free speech and freedom of association;

Count III: as to all Defendants, negligence or gross negligence, based on the alleged willful disregard of Wysocki's constitutional rights under Article 1 of the New Jersey State Constitution;

Count IV: as to the Wardlaw Defendants collectively, violations of Title VI of the Civil Rights Act of 1964, based on the alleged fostering or tolerance of a racially discriminatory school environment;

Count V: as to the Wardlaw Defendants and Wagner, negligent infliction of emotional distress, based on the alleged failure to exercise a duty of care owed to Wysocki;

Count VI: as to the Wardlaw Defendants collectively, intentional infliction of emotional distress, based on the alleged conditions and restrictions imposed on Wysocki;

Count VII: as to the Wardlaw Defendants collectively, violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c), based on the alleged deprivation of Wysocki's constitutional rights;

Count VIII: as to the Wardlaw Defendants collectively, fraud, based on the alleged false representations in the student handbook used to induce students to enroll at the school;

Count IX: as to Wardlaw, violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, based on the alleged false representations in the student handbook used to induce students to enroll at the school;

Count X: as to Wardlaw, breach of the implied covenant of good faith and fair dealing implicit in its enrollment contract;

Count XI: as to Wagner, negligence, based on the alleged failure to investigate the circumstances surrounding the video clip; and

Count XII: as to Wagner, breach of contract, based on the alleged rescission of Wysocki's letter of intent and admission offer.  Am. Compl. ¶¶ 88-133.

The Wardlaw Defendants initially answered the Amended Complaint, but later requested and were granted leave to move for partial judgment on the pleadings.  *See* ECF Nos. 27, 28.  Wagner moved to dismiss.  ECF No. 12.  Forsythe answered the Amended Complaint and asserted a crossclaim against all Defendants for contribution and indemnification.  ECF No. 15.  As to Valcourt, an Affidavit of Service reflects a copy of the summons and Amended Complaint was successfully served on a member of her household on July 19, 2021, but she has not entered an appearance in this case.  Ex. C at 4, ECF No. 1-3.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  Federal Rule of Civil Procedure 12(c) provides for similar relief by allowing a party to move for judgment on the pleadings, though only after the pleadings are closed and early enough not to delay trial.  Where, as here, a Rule 12(c) motion for judgment on the pleadings is based on an allegation that the plaintiff has failed to state a claim, the Court analyzes the motion under the same standards that apply to a Rule 12(b)(6) motion to dismiss.  *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

Accordingly, in adjudicating either motion, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).

And the Court must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint's factual allegations need not be detailed, but they must contain sufficient factual matter to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Finally, while the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6), or as here, both a Rule 12(b)(6) and a Rule 12(c), motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230.

## IV.   DISCUSSION

### A.  Wagner's Rule 12(b)(6) Motion to Dismiss

Wagner moves to dismiss the four New Jersey common law claims asserted against it for failure to state a claim: Count III for the negligent or grossly negligent disregard of Wysocki's constitutional rights; Count V for negligent infliction of emotional distress; Count XI for negligence; and Count XII for breach of contract. *See generally* Def. Mov. Br., ECF No. 12-5.

Plaintiffs' brief in opposition fails to present any substantive legal argument or analysis in response to the multiple arguments Wagner advances in its moving brief. *See* Pls. Opp. Br. at 10-12, ECF No. 17-1. Instead, Plaintiffs haphazardly recite a handful of paragraphs from the Amended Complaint in an attempt to demonstrate their factual allegations are sufficient to state a claim. *Id.* The Court is inclined to find that Plaintiffs have therefore waived their opportunity to contest Wagner's arguments but will nonetheless discuss the arguments briefly and confirm that the counts against Wagner must be dismissed. *See Powell v. Verizon*, No. 19-8418, 2019 WL 4597575, at *9 (D.N.J. Sept. 20, 2019) (finding plaintiff conceded arguments where he failed to offer any substantive arguments in response to a motion to dismiss); *O'Neal v. Middletown Twp.*, No. 18-5269, 2019 WL 77066, at *4 (D.N.J. Jan. 2, 2019) (finding same); *Person v. Teamsters Local Union 863*, No. 12-2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver.").

### 1.  Count III – Negligence or Gross Negligence

Where Count II of the Amended Complaint alleges that the Wardlaw Defendants violated Wysocki's rights to free speech and freedom of association under Article 1 of the New Jersey State Constitution, Count III alleges that the deprivation of those rights, including the deprivation "of her earned and thus vested right to participate in her graduation ceremony," the revocation of "her earned and thus vested right to VIP reservations at said ceremony," and the "effective expulsion" from Wardlaw "without any right to be heard administratively or judicially," constitutes negligence or gross negligence on the part of all Defendants. Am. Compl. ¶ 97.

Notwithstanding Plaintiffs' reference to Defendants collectively, Plaintiffs have not alleged facts connecting Wagner to the conduct on which Count III is based. The Amended Complaint lacks factual allegations showing Wagner had any involvement in decisions concerning Wysocki's attendance at her high school classes or graduation ceremony. Those decisions, as alleged, were strictly within the purview of the Wardlaw Defendants. Count III therefore fails to state a plausible claim against Wagner and is dismissed as to Wagner alone.

## 2. Count XII – Breach of Contract

In Count XII, Plaintiffs allege that the NLI between themselves and Wagner constituted a binding contract which the college breached by voiding the NLI and withdrawing the Athletics Award Agreement without first making "any valid serious inquiry about the truth" in regard to the video clip. Am. Compl. ¶¶ 131-33.

Generally speaking, to state a claim for breach of contract, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). This inquiry is ordinarily straightforward: "[t]he Court determines what obligations the parties owed each other, often by interpreting the express contract, and decides if one party failed to do what it promised." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 373 (D.N.J. 2021).

However, as this Court examined in its recent decision in *Powell v. Seton Hall Univ.*, No. 21-13709, 2022 WL 1224959, at *8-9 (D.N.J. Apr. 26, 2022), ordinary breach of contract principles do not always provide the most appropriate framework for resolving a breach of contract dispute between a student and a university. New Jersey courts have recognized that the relationship between a university and its students often times cannot be classified as purely contractual and that some deference towards a university's decisions is warranted. *See Doe v. Princeton Univ.*, 790 F. App'x 379, 385 (3d Cir. 2019)). As a result, courts have been reluctant to apply strict contractual principles and have developed and applied the more unique "substantial departure" standard or the quasi-contract standard to student-university breach of contract-type disputes. *See Powell*, 2022 WL 1224959, at *9.

The appropriate standard to apply ultimately depends on the context of the claim. *Dougherty*, 534 F. Supp. 3d at 374.

For instance, where a case involves academic dismissal, student misconduct, or the application of policies in a student manual, courts have typically limited their review of university action to a consideration of whether (1) the university substantially departed from its own rules and regulations, (2) the procedures employed by the university were fundamentally fair, and (3) the university's decisions were supported by sufficient evidence. *See Keles v. Bender*, No. 17-1299, 2021 WL 568105, at *4 (D.N.J. Feb. 16, 2021); *see also Dougherty*, 534 F. Supp. 3d at 374 (noting contexts in which courts have applied the substantial departure standard of review to university action). In addition to this standard, courts have also applied a quasi-contract standard to issues concerning broad administrative or business decisions made by a university, such as the closure of a college or program or the decision to institute remote learning during the Covid-19 pandemic, asking whether the university's decision "was arbitrary, made in bad faith, or lacking in fair notice." *Dougherty*, 534 F. Supp. 3d at 375-76; *see also Fittipaldi v. Monmouth Univ.*, No. 20-05526, 2021 WL 2210740, at *8-9 (D.N.J. June 1, 2021); *Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.*, 605 A.2d 776, 783-84 (N.J. Super. Ct. Law Div. 1991).

The question then is which of the three standards—the ordinary contract standard, the substantial departure standard, or the quasi-contract standard—provides the most appropriate framework for analyzing Plaintiffs' breach of contract dispute with Wagner. This case does not raise the sort of administrative or business decisions to which the quasi-contract standard would apply. And while this case certainly sounds in student misconduct, Plaintiffs are not alleging that Wagner acted in violation of its own generally applicable rules or policies, such that the substantial departure standard would apply. Plaintiffs' breach of contract claim is specifically premised on the NLI between themselves and Wagner. The Court will therefore apply principles of ordinary contract law in analyzing their claim. *See Powell*, 2022 WL 1224959, at *9 (applying principles of ordinary contract law to plaintiff's contract claim related to a specific contract between himself and the university).

Because Plaintiffs attach a copy of Wysocki's signed NLI and Athletics Award Agreement to the Amended Complaint, the Court consults the documents directly. *See* Ex. 20, ECF No. 1-2. The NLI obligates Wagner to provide Wysocki with a written offer of financial aid for the 2021-2022 academic year in exchange for her enrollment and her commitment to the college's soccer program. *Id.* The accompanying Athletics Award Agreement delineates the amount of the grant and the conditions Wysocki, as the recipient, must fulfill and maintain to keep it. *Id.* By signing the Athletics Award Agreement, Wysocki acknowledged that she must fulfill Wagner's and the NCAA's admissions requirements and rules for athletics participation. *Id.* She further acknowledged that the award may be immediately reduced or canceled if she "engage[s] in serious misconduct that brings disciplinary action from [Wagner]." *Id.*

Assuming the NLI and Athletics Award Agreement constitute a binding contract between the parties, the Amended Complaint lacks any factual allegations tending to show breach. Plaintiffs do not identify, and the Court cannot discern, any specific terms or provisions in either of the documents that obligate Wagner to undertake any type of investigation. Am. Compl. ¶ 78. That Wagner's efforts to investigate the video resulted in a decision unfavorable to Wysocki is not the equivalent of showing Wagner breached some alleged obligation to her. Plaintiffs must identify the specific contractual terms or provisions that give rise to the obligation, and as they have not done so here, the Court cannot draw a reasonable inference of liability for breach of contract. *See Wingate Inns Intern., Inc. v. Cypress Centre Hotels, LLC*, No. 11-6287, 2012 WL 6625753, at *9 (D.N.J. Dec. 19, 2012); *Eprotec Preservation, Inc. v. Engineered Materials, Inc.*, No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011) ("Failure to allege the specific provisions of contracts breached is grounds for dismissal"). Accordingly, Count XII fails to state a claim against Wagner and is dismissed.

### 3. Counts V and XI – NIED and Negligence

Count XI alleges that Wagner was negligent and "breach[ed] the duty of care that [it] owed to [Wysocki]" by "failing seriously to investigate in depth the circumstances" of the video clip. Am. Comp. ¶ 129. This claim appears to be premised on the same conduct as Plaintiff's breach of contract claim against Wagner that the Court dismissed above.

To state a claim for negligence under New Jersey law, a plaintiff must sufficiently allege: (1) the existence of a duty owed by defendant towards plaintiff; (2) a breach of that duty by defendant; (3) that defendant's breach caused plaintiff's injuries; and (4) that plaintiff suffered damages as a result. *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015). The threshold inquiry is whether the defendant owed the plaintiff a duty of care, the existence of which is generally a matter of law. *Leonard v. Golden Touch Transp. of N.Y. Inc.*, 144 F. Supp. 3d 640, 644 (D.N.J. 2015).

Here, Plaintiffs allege that Wagner, "as a learning institution" concerned with the "issues of truth, free thought, and free speech," owed a duty to Wysocki and her parents to undertake a "non-negligent investigation." Am. Compl. ¶ 78. Plaintiffs allege that a "proper investigation" would have entailed Wagner considering the "reliability of the information provided by the Wardlaw connected sources, the motives of the sources, their bias, interest, and corruption." *Id*.

As to the element of duty, Plaintiffs offer no substantive legal argument in response to Wagner's motion to dismiss and thus have not identified any New Jersey laws recognizing a duty of care owed by a private university stemming from its decision to rescind an admission offer or scholarship. And even if Plaintiffs had pleaded a legally cognizable duty, the sole factual allegation against Wagner in the 133-paragraph Amended

Complaint—that Wagner did not consider Wardlaw's reliability, motives, bias, interest, and corruption when it decided to void Wysocki's NLI—is an accusation that explains little about what Wagner allegedly did or did not do and how that ultimately affected its decision-making. This is particularly evident in the face of Wagner's email to Wysocki explaining that, at the videoconference, she had "admitted to using a racial epithet and that it was her in the video," which Wagner found to be serious misconduct in violation of her Athletics Award Agreement.[2] Ex. 20, Am. Compl. Absent sufficient factual allegations tending to show Wagner owed Plaintiffs a legal duty and Wagner breached that duty, the Court cannot find that Plaintiffs have stated a cognizable claim for negligence against Wagner. Count XI is therefore dismissed.[3]

Count V against the Wardlaw Defendants and Wagner for negligent infliction of emotional distress ("NIED") is likewise dismissed as to Wagner alone. A claim for direct NIED requires a plaintiff to sufficiently allege that the defendant owed a duty of reasonable care to the plaintiff, that the defendant breached that duty, and that the breach proximately caused plaintiff to suffer severe emotional distress. *G.D. v. Kenny*, 984 A.2d 921, 933 (N.J. Super. Ct. App. Div. 2009), *aff'd*, 15 A.3d 300 (N.J. 2011). Without sufficient factual allegations tending to show duty or breach on Wagner's part, Plaintiffs fail to state a claim for NIED against Wagner. At this point, all claims against Wagner have been dismissed.

---

[2] To be clear, the Amended Complaint appears to assert alternative theories concerning the video clip—that it was doctored or fabricated, but that Wysocki's use of the racial epithet was nonetheless an exercise of free speech. *See, e.g.*, Am. Compl. ¶¶ 14(d), 20. Plaintiffs specifically allege that they advised the Wardlaw Defendants that the clip appeared to be doctored or fabricated, but they do not allege that they raised this concern with Wagner. *See id.* ¶¶ 20, 30.

[3] In dismissing Count XI on the grounds that it fails to state a claim, the Court does not reach Wagner's argument that it is immune from liability for negligence under New Jersey's Charitable Immunity Act, N.J.S.A. 2A:53A-7. *See* Def. Mov. Br. at 16-18, ECF No. 12-5. Wagner assumes that as a not-for-profit entity it is entitled to the protections of the statute, but as an out-of-state institution, it is not abundantly clear that is so. *See, e.g.*, *Feniello v. Univ. of Pennsylvania Hosp.*, 558 F. Supp. 1365, 1368 (D.N.J. 1983) (holding that the Act was inapplicable to a Pennsylvania hospital, even where the hospital may have provided substantial services to a New Jersey resident, because it was incorporated in Pennsylvania and performed all of its functions therein; New Jersey thus did not have a great interest in applying its own law to protect an out-of-state corporation, "especially at the expense of a New Jersey resident plaintiff."). Wagner represents that it is a New York college that "operates outside of the State of New Jersey," has "no formal or informal relationship with New Jersey," and "is not subject to direct regulation by New Jersey." Def. Reply at 9-10, ECF No. 18. Moreover, unlike New Jersey, Wagner's home state of New York does not recognize charitable immunity. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003) ("Although New York . . . once recognized charitable immunity, [it] abolished the doctrine long before the events giving rise to this suit."); *see also Walker v. Young Life Saranac Vill.*, No. 10-1578, 2012 WL 5880682, at *12 n.39 (N.D.N.Y. Nov. 21, 2012). Absent any analysis on this issue by either party, however, the Court makes no determination as to whether the Charitable Immunity Act applies here to immunize Wagner from liability.

## B.  The Wardlaw Defendants' Rule 12(c) Motion for Judgment on the Pleadings

The Court turns next to the Wardlaw Defendants' Rule 12(c) motion for partial judgment on the pleadings.  On this motion, the Wardlaw Defendants seek dismissal of each of the following counts for failure to state a claim: Count I for breach of contract; Count VI for intentional infliction of emotional distress; Count VII for violations of the New Jersey Civil Rights Act; Count VIII for common law fraud; Count IX for violations of the New Jersey Consumer Fraud Act; and Count X for breach of the implied covenant of good faith and fair dealing.  *See generally* Defs. Mov. Br., ECF No. 28-1.  Plaintiffs' brief in opposition again fails to present substantive legal arguments in response.  *See* Pls. Opp. Br. at 11-17, ECF No. 29.

### 1.  Ripeness of the Rule 12(c) Motion

Plaintiffs devote much of their brief in opposition to arguing, as a threshold matter, that the Wardlaw Defendants' Rule 12(c) motion is procedurally improper because the pleadings are not closed.  *See id.* at 2-10.  Wagner has yet to file an answer due to its pending motion to dismiss and Valcourt has yet to enter an appearance and respond to the Amended Complaint filed eleven months ago.  Nonetheless, the Wardlaw Defendants' Rule 12(c) motion is addressed to claims for which the pleadings *have* closed, as these claims are specifically alleged against only the Wardlaw Defendants, who have already filed an Answer in response.  *See, e.g.*, *EMD Performance Materials Corp. v. Marque of Brands Ams. LLC*, No. 21-3050, 2022 WL 62532, at *4 (E.D. Pa. Jan. 6, 2022) (treating a Rule 12(c) motion as ripe, even where a Rule 12(b)(6) motion was pending, "because the issues to be decided on the Rule 12(c) motion have been joined in the pleadings and there will be no prejudice to either party in consideration of the motion").  This is not an instance where the disposition of the Rule 12(b)(6) motion would affect the composition of Plaintiffs' Amended Complaint in a significant way as to *all* of the parties, thereby making it imprudent to consider the Rule 12(c) motion contemporaneously.  *See, e.g.*, *Mulheron v. Philadelphia Eagles*, No. 12-1753, 2013 WL 211349, at *4 (D.N.J. Jan. 18, 2013) (treating defendants' Rule 12(c) motion as untimely where co-defendant's Rule 12(b)(6) motion was still pending and would "affect the composition of the Plaintiff's complaint in a significant way as to all of the parties").  Indeed, even with the claims against Wagner having been dismissed on the Rule 12(b)(6) motion, the claims against the remaining Defendants are undisturbed.  Thus, under these circumstances, in the absence of a showing of prejudice to any party, and for purposes of judicial efficiency, the Court will treat the Wardlaw Defendants' Rule 12(c) motion as ripe for adjudication.

### 2.  Count I – Breach of Contract

Count I of the Amended Complaint alleges that Wardlaw breached its enrollment contract with Plaintiffs by violating the terms of its Student-Parent Handbook (the

"Handbook").  Am. Compl. ¶ 89.  Plaintiffs attached only certain pages of the Handbook to the Amended Complaint and did not attach the Enrollment Contract.  *See* Ex. 10, ECF No. 1-2.  Plaintiffs allege that by signing the enrollment contract, they agreed to read the Handbook, thereby incorporating its provisions into the contract.  Am. Compl. ¶¶ 51, 89. Wardlaw argues that the breach of contract claim fails because the Handbook is not a contract but merely offers students guidelines by which to abide.  Defs. Mov. Br. at 7, ECF No. 28-1.

As stated previously, a straightforward breach of contract claim requires a plaintiff to sufficiently allege the existence of a contract, that defendant breached that contract, and that damages flowed therefrom.  *Frederico*, 507 F.3d at 203.  Here, Plaintiffs fail to adequately plead the first element of their claim.  Their allegation that the Handbook is incorporated into the enrollment contract because they attested to having read the Handbook is too tenuous to support an inference that its provisions create contractual obligations.  Under an ordinary breach of contract theory then, Plaintiffs have not pleaded a plausible claim against Wardlaw.

Setting aside Plaintiffs' strict characterization of the claim as one for breach of contract, the gravamen of the claim and of the Complaint as a whole is that Wardlaw failed to follow its own disciplinary policies and procedures.  In considering such a claim, the Court is guided by two decisions from the New Jersey Superior Court, Appellate Division: *Hernandez v. Don Bosco Preparatory High*, 730 A.2d 365 (N.J. Super. Ct. App. Div. 1999) and *B.S. v. Noor-Ul-Iman Sch.*, A-4905-13T2, 2016 WL 4145921 (N.J. Super. Ct. App. Div. Aug. 5, 2016).  In *Hernandez*, the Appellate Division considered what procedural protections a private high school must afford its students upon disciplinary expulsion.  730 A.2d at 373.  The court held that a private high school, when expelling a student for misconduct, must: (1) "adhere to its own established procedures for dismissal"; and (2) in carrying out the dismissal, "follow a procedure that is fundamentally fair."  *Id.* at 376.  The Appellate Division, albeit in an unpublished decision, later extended the application of this two-pronged analysis to discipline by a private school that stopped short of expulsion, such as where the student is removed from school and made to complete assignments from home without in-home instruction while the school undertakes a lengthy investigation lasting the rest of the school year.  *Noor-Ul-Iman Sch.*, 2016 WL 4145921, at *3, 6.  There, the court held that to state a claim against a private school for improperly exercising a disciplinary policy, a plaintiff must allege facts that, if true, satisfy the *Hernandez* standard.  *Id.* at *6. "[A] plaintiff must allege the school either failed to 'adhere to its own established [disciplinary] procedures' or, in carrying out the discipline, failed to 'follow a procedure that is fundamentally fair.'"  *Id.* (quoting *Hernandez*, 730 A.2d at 376).

Under this standard, the Court finds that the Amended Complaint, though not a model of clarity, includes enough factual allegations which, if assumed to be true and viewed in the light most favorable to Plaintiffs, suggest that Wardlaw failed to adhere to its established policies and acted in an unfair manner when disciplining Wysocki.  A brief

look at some of the Handbook's provisions is useful here.  One of the Handbook's sections addresses "Behavioral Expectations" and "provides the academic and behavioral rules and guidelines by which the school expects its students to abide."  Ex. 10 at 15, Am. Compl. The section iterates that Wardlaw "will not tolerate verbal, physical, texting or other online conduct" that bullies or harasses any member of the school community.  *Id.* at 17, 24-25; Am. Compl. ¶¶ 53-54.  The section further states, in relevant part:

> In most instances[,] complaints of harassment or bullying by a member of our community will be dealt with directly by the administration.  If deemed necessary, a special committee of faculty and staff will be appointed by the Head of School for thorough and prompt investigation.

> The administration or the committee will consider all related information in determining whether the alleged improper conduct occurred and whether that conduct constitutes harassment or bullying.

Ex. 10 at 15, Am. Compl.  When disciplinary action is warranted, Wardlaw's policy is that the "internal punishment should be commensurate to the violation."[4]  *Id.*; Am. Compl. ¶ 52.  Plaintiffs allege that Wardlaw failed to adhere to these policies and engaged in a fundamentally unfair process by questioning Wysocki and recording the questioning without first notifying her parents; by failing to investigate the instances of bullying and harassment that Plaintiffs reported to Wardlaw in relation to the circulation of the video clip; by failing to consider the context of the video clip or Plaintiffs' contentions that the clip was doctored or fabricated; and by excessively disciplining Wysocki in prohibiting her from classes, school activities, and graduation, and withholding her honors, awards, transcript, and letters of recommendation for college applications.  *See* Am. Compl. ¶¶ 39, 45, 52-54, 56, 64.  While discovery will ultimately determine whether Plaintiffs can substantiate their version of the events, the Court finds they have satisfied their burden at this early stage and have pleaded enough to state a claim against Wardlaw under Count I for breach of the Handbook's policies and procedures.  Count I therefore survives the Wardlaw Defendants' motion and may proceed.

### 3.  Count VI – IIED

Count VI alleges that the Wardlaw Defendants are liable for intentional infliction of emotional distress ("IIED").  The crux of the claim is that the Wardlaw Defendants' imposition of disciplinary sanctions, along with their restricting or delaying the release of her transcripts and letters of recommendation, destroyed Wysocki's future and resulted in her suffering "anxiety attacks, mental distress, post-traumatic effects, and psychiatric

---

[4] The Court acknowledges the somewhat vague nature of these provisions; however, because Plaintiffs have attached only certain pages of the Handbook to their Amended Complaint, the Court is unable to determine whether more precise disciplinary procedures are detailed further therein.

injury." *See* Am. Compl. ¶¶ 48-50, 109-10.  The Wardlaw Defendants argue that Plaintiffs' allegations, even if assumed to be true, do not give rise to the kind of extreme and outrageous conduct required to sustain a claim for IIED.  The Court agrees.

To state a plausible claim for IIED, Plaintiffs "must plead, among other things, that Defendants' conduct was extreme and outrageous." *Gok v. Ports Am., Inc.*, No. 15-3468, 2015 WL 4915518, at *4 (D.N.J. Aug. 17, 2015) (citing *Buckley v. Trenton Saving Fund Soc.,* 544 A.2d 857, 863 (N.J. 1988)).  Plaintiffs have not pleaded facts that satisfy this standard.  The Wardlaw Defendants' alleged conduct in disciplining Wysocki simply does not rise to the level of "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (quoting *Buckley*, 544 A.2d at 863); *see also Doe v. Rider Univ.*, No. 16-4882, 2018 WL 466225, at *18 (D.N.J. Jan. 17, 2018) ("One will not satisfy the [IIED] elements by merely demonstrating a defendant acted 'unjust, unfair, and unkind.'"). Accordingly, Plaintiffs have failed to state a claim against the Wardlaw Defendants for IIED and Count VI is dismissed.

### 4.  Count VII – Violations of the NJCRA

Count VII alleges that the Wardlaw Defendants violated the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2(c).  Am. Compl. ¶¶ 112-13.  As the Wardlaw Defendants argue, and Plaintiffs agree, this claim must be dismissed because the Wardlaw Defendants are not state actors within the meaning of the statute.  Defs. Mov. Br. at 9, ECF No. 28-1; Pls. Opp. Br. at 15, ECF No. 29; *see Hottenstein v. City of Seal Isle City*, 793 F. Supp. 2d 688, 694 (D.N.J. 2011) (dismissing NJCRA claim because defendants were not state actors); *Cottrell v. Zagami, LLC*, No. 08-3340, 2010 WL 2652229, at *4 (D.N.J. June 23, 2010) ("[The] NJCRA does not permit[] private suits against private persons absent state action.").  Count VII is therefore dismissed with prejudice.

### 5.  Count VIII – Fraud

Count VIII alleges that Wardlaw Defendants are liable for fraud because the Handbook's policies on discipline, harassment, bullying, awards and recognition, and the exercise of free speech were misrepresentations used to induce Plaintiffs to enroll Wysocki into Wardlaw.  Am. Compl. ¶¶ 73-75, 115-16.  The Wardlaw Defendants argue that Plaintiffs have not sufficiently pleaded that the Wardlaw Defendants misrepresented its policies or that Plaintiffs reasonably relied on those policies when enrolling Wysocki in the school.  Defs. Mov. Br. at 12-14, ECF No. 28-1.

"[A] party is fraudulently induced to enter into an agreement when 'a knowing misstatement has been made, on the basis of which the defrauded party signs the instrument.'" *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp.

2d 668, 681 (D.N.J. 2009) (quoting *Metex Mfg. Corp. v. Manson,* No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)).   To state a cognizable claim for fraudulent inducement, a plaintiff must plead sufficient facts showing that the defendant made a material misrepresentation of a presently existing or past fact, which was false and known to be false when made, made for the purpose of inducing the plaintiff to rely on it, and the plaintiff did reasonably rely on it, resulting in damages. *Ceballo v. Mac Tools, Inc.*, No. 11-4634, 2011 WL 4736356, at *4 (D.N.J. Oct. 5, 2011).

Beyond the basic elements needed to plead a fraudulent inducement claim, a plaintiff asserting such claim must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *J.H. Reid Gen. Contractor v. Conmaco/Rector, L.P.*, No. 08-6034, 2010 WL 398486, at *6 (D.N.J. Jan. 27, 2010).  Rule 9(b) requires a plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico*, 507 F.3d at 200 (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)).

Here, Plaintiffs allege that the Wardlaw Defendants represented, through the policies outlined in the Handbook, that they would discipline students in a manner commensurate to the violation; that they would not tolerate bullying, cyberbullying, harassment, or discrimination; and that they would promote free speech and thinking among students. Am. Compl. ¶¶ 73-75. Plaintiffs further allege that "[t]hese representations were made and continued to be made to [P]laintiffs with knowledge of their falsity" because Wardlaw, among other acts, "permitted the creation of a race-based group of black students" and disciplined Wysocki in the manner that it did without also disciplining the students who circulated the video clip and harassed her. *Id.* ¶¶ 74-75. Plaintiffs explain in their brief in opposition that "[t]he falsity of [the] representations became apparent when on opportunity to apply them the school did not seek to apply them to the reverse racist perpetrator that doctored the clip." Pls. Opp. Br. at 16, ECF No. 29.

Plaintiffs' allegations posit nothing more than that the Wardlaw Defendants allegedly did not adhere to their own policies—conduct which Plaintiffs already seek to recover for under a breach of contract theory.  That the Wardlaw Defendants breached some future promise to Plaintiffs is not the equivalent of the Wardlaw Defendants knowingly misstating the Handbook provisions at the time Plaintiffs enrolled Wysocki in school in order to induce them into enrolling. *See CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 305 (D.N.J. 2020), *recons. denied*, No. 15-3103, 2021 WL 1187123 (D.N.J. Mar. 30, 2021) ("Fraud is a far narrower theory than breach of contract; it does not cover an ordinary breach of promise about future events."). The Amended Complaint fails to include coherent factual allegations tending to show the latter scenario. For these reasons, Plaintiffs have not stated a plausible claim against the Wardlaw Defendants for fraudulent inducement and Count VIII is dismissed.

### 6.   Count IX – Violations of the NJCFA

Count IX alleges that Wardlaw violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, *et seq.*, based on the same alleged misrepresentations that underlie the fraudulent inducement claim.  Am. Compl. ¶¶ 121-25.

To state a claim under the NJCFA, "a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico*, 507 F.3d at 202 (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462-65 (N.J. 1994)).  Like their claim for fraudulent inducement, Plaintiffs' claim for violation of the NJCFA is subject to Rule 9(b)'s heightened pleading requirements.  *See Vita v. Vita*, No. 21-11060, 2022 WL 376764, at *6 (D.N.J. Feb. 8, 2022).

Wardlaw argues that Plaintiffs have not pleaded facts showing either an unlawful practice or ascertainable loss.  Defs. Mov. Br. at 15, ECF No. 28-1.  There are three general categories of unlawful practices within the meaning of the NJCFA: affirmative acts, knowing omissions, and violations of specific regulations promulgated under the statute. *Frederico*, 507 F.3d at 202.  Plaintiffs' allegations that Wardlaw made affirmative misrepresentations in its Handbook as part of a fraudulent business practice to reach consumers falls within the first category of affirmative acts.  *See* Am. Compl. ¶ 123.  The alleged misrepresentations, however, are insufficient to state a claim under the NJCFA.  As the Court explained in its analysis of Plaintiffs' fraudulent inducement claim, the alleged misrepresentations concerning the Handbook's policies merely constitute Wardlaw's alleged failure to adhere to its own policies and procedures, which Plaintiffs seek to recover for under a breach of contract theory.  *See Vita*, 2022 WL 376764, at *5 (dismissing NJCFA claim because "the alleged misrepresentations . . . merely constitute a breach of the contract between the parties"); *Hunt Constr. Group, Inc. v. Hun Sch. of Princeton*, No. 08-03550, 2009 WL 1312591, at *6 (D.N.J. May 11, 2009) (dismissing NJCFA counterclaim because defendant merely alleged that "[plaintiff] failed to abide by its obligations under the contract").

Additionally, Plaintiffs have not adequately pleaded an ascertainable loss to establish a cause of action under the NJCFA.  Under the statute, "[a]n ascertainable loss is a loss that is quantifiable or measurable; it is not hypothetical or illusory." *Hammer v. Vital Pharm., Inc.*, No. 11-4124, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012) (quoting *Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 576 (N.J. 2010)) (quotation marks omitted). Plaintiffs' bare, unsupported allegation that "[t]he damages to Plaintiffs are ascertainable" misses the mark.  *See* Am. Compl. ¶ 125.  Having failed to plead facts showing an unlawful practice and ascertainable loss, Plaintiffs have not stated a cognizable claim against Wardlaw for violation of the NJCFA.  Count IX is dismissed.

### 7.  Count X – Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, Count X alleges that Wardlaw breached the implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 126-27. Defendants argue that Plaintiffs have not pleaded factual allegations to support the elements of their claim, nor can they base their claim on the same set of facts giving rise to their breach of contract claim. Defs Br. at 16, ECF No. 28-1.

"To establish a breach of the covenant of good faith and fair dealing, a plaintiff must show that 'the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" *T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, No. 14-4209, 2015 WL 1119475, at *13 (D.N.J. Mar. 11, 2015) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387, 396 (N.J. 2005)). "[C]ourts have repeatedly recognized that 'a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when . . . the cause of action arises out of the same conduct underlying the alleged breach of contract.'" *Elite Pers. Inc. v. PeopleLink, LLC*, No. 15-1173, 2015 WL 3409475, at *3 (D.N.J. May 27, 2015) (quoting *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009)).

The Court cannot discern coherent factual allegations supporting Plaintiffs' bare assertion that "Wardlaw violated and breached the implied covenant[] of good and faith and fair dealing and caused proximate[] damages" to Plaintiffs. *See* Am. Compl. ¶ 127. And Plaintiffs' argument in their brief in opposition "refer[ring] the Court to [their] answer to Count I" to demonstrate "there was a contract of which the handbook was [a part of]" and "there was a violation of the covenant of good faith and fair dealing" does nothing to clarify their claim. Pls. Opp. Br. at 17, ECF No. 29. Plaintiffs, therefore, have not stated a plausible claim against Wardlaw for breach of the implied covenant of good faith and fair dealing. Count X is dismissed.

## V.   CONCLUSION

For all the foregoing reasons, Wagner's Rule 12(b)(6) motion to dismiss, ECF No. 12, is **GRANTED** and the Wardlaw Defendants' Rule 12(c) motion for partial judgment on the pleadings, ECF No. 28, is **GRANTED IN PART and DENIED IN PART**.

All claims against Wagner—Counts III, V, XI, and XII—are **DISMISSED** for failure to state a claim. Counts VI, VII, VIII, IX, and X against Wardlaw or the Wardlaw Defendants collectively are likewise **DISMISSED** for failure to state a claim. The claims are dismissed **WITHOUT PREJUDICE**, except as to Count VII, which is dismissed **WITH PREJUDICE**. Count I survives the Wardlaw Defendants' motion and may proceed.

The remaining operative claims in the Amended Complaint are therefore as follows: Count I as to Wardlaw; Count II as to the Wardlaw Defendants; Count III as to the Wardlaw

Defendants, Forsythe, and Valcourt; Count IV as to the Wardlaw Defendants; and Count V as to the Wardlaw Defendants.

     An appropriate Order accompanies this Opinion.

                           /s/ William J. Martini
                         **WILLIAM J. MARTINI, U.S.D.J.**

**Date:  June 16, 2022**