**Tomas Espinosa, Esq.**
**Att. Id. No. 025691985**
**8324 Kennedy Blvd. 2nd Floor**
**North Bergen, NJ 07047**
**Tel: (201) 223-1803**
**E-Mail te@lawespinosa.com**
**Attorney for Plaintiffs Isabella Wysocki, James Wysocki and Racquel Wysocki**

| | |
|---|---|
| Isabella Wysocki, James Wysocki and Racquel Wysocki<br><br>Plaintiffs<br><br>v.<br><br>The Wardlaw- Hartridge School, Christine Cerminaro, Robert M. Bowman, PhD Andrew Webster Austin Forsythe Wagner College, Nadia Valcourt, John Does (a fictitious designation of 1-10 male persons) Jane Doe (a fictitious designation of females 1-10)<br><br>Defendants | **UNITED STATES DISTRICT COURT**<br><br>**FOR THE DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION<br><br>**Civil Action No.**<br>**2:21-cv-14132 (WJM) (CLW)**<br><br>SECOND AMENDED<br><br>COMPLAINT AND JURY DEMAND |

Plaintiffs Isabella Wysocki, James Wysocki and Racquel Wysocki, all residing at 986 Pierpont Street, Rahway, NJ 07605, through their attorney Tomas Espinosa, Esq. and by way of verified complaint against the defendants, states:

## VENUE AND JURISDICTION

1.  The claims under New Jersey Constitution Article 1, Paragraphs 5 and 6 and other applicable laws, on which this action is legally based are within the jurisdiction of the Superior Court of New Jersey as are the claims brought under New Jersey's statutory

law and case law and other application statute, against The Wardlaw-Hartridge School and its defendants employees who in violation of state law infringed and violated Plaintiff Bella Wysocki's rights to free speech and other rights guaranteed by the New Jersey State Constitution Plaintiffs seek a declaration that Defendants violated her clearly established constitutional rights under the New Jersey State Constitution as set forth in the Complaint; a declaration that Defendants' denial of free speech and other state constitutional as set forth in their complaint; and also the counts of torts committed against the plaintiffs, including the violation of her rights protected by the New Jersey Civil Right Act as well as breach of contract, for which plaintiffs seek the granting of permanent and temporary injunctions as well as temporary restraints, and damages for past and future losses , compensatory, consequential, and where applicable punitive.

## PARTIES

2.   Plaintiff Isabella Wysocki (referred to hereafter as "Plaintiff Bella", or "Bella" or "Bella Wysocki") is an adult resident of the State of New Jersey. Plaintiffs James Wysocki and Racquel Wysocki are her parents, and although the events subject matter of this litigation arose when she was a minor, she became on April 2, 2021, eighteen years old.

3.   Defendant The Wardlaw-Hartridge School ("Wardlaw") is a private school, located at 1295 Inman Avenue, Edison, NJ 08820, is a high school.  Wardlaw is where Bella was expected to graduate this year with ceremonies scheduled for June 11, 2021, June 16, 2021, and June 18, 2021.

4.      Defendant Robert M. Bowman ("Dr. Bowman" or "Bowman") is the principal of upper school at Wardlaw Hartridge and an employee of The Wardlaw Hartridge School, is a natural adult resident of the State of New Jersey with place of business and main office at the address of the said school.

5.      Defendant Christine Cerminaro ("Cerminaro") is the official teacher, on information and belief is the dean of students for the Upper School at The Wardlaw Hartridge School and an employee of The Wardlaw Hartridge School, is a natural adult person resident of the state of New Jersey.

6.      Defendant, Andrew Webster, ("Webster") Learning Director at The Wardlaw Hartridge School and an employee of The Wardlaw Hartridge School, is a natural adult person resident of the state of New Jersey.

7.      Defendant Organization and persons that are responsible person of the posting of the clip on the internet whether students or other related individual's that called themselves "Wardlaw Uncensored" that were at all times relevant to his or her actions students at the Wardlaw responsible on the broadcasting by posting on the internet the clip that resulted in the injuries and losses to plaintiffs for the sole purpose of bullying, harassing and sabotaging Bella. These persons other than those identified below are included in the fictitious designated defendants below.

8.      Defendants Austin Forsythe and Nadya Valcourt are or were students at all times relevant to their actions at Wardlaw. They broadcasted the clip and caused and participated in causing the injuries of the plaintiffs with the sole aim of bullying, harassing and sabotaging Bella.

9.  Defendant Nadya Valcourt is or was at the time a student of the events stated herein in this verified complaint. She engaged in the sending of the Clip to Wagner College that was one of the causes contributing to the loss of Bella's NIL and her scholarship with Wagner College.

10. Defendants John Doe (1-10) a fictitious designation and Jane Doe (1-10) a fictitious designation were persons that either at Wagner College or at Wardlaw participated as actors in the events stated in this verified complaint and who individually or jointly with the other defendants by their actions or omissions directly and proximately caused the damages to plaintiffs stated herein in this verified complaint.

## FACTS

11. On January 3, 2021, Christine Cerminaro ("Cerminaro") called plaintiff Bella's parents (also plaintiffs herein) saying they have to have a meeting with Robert M. Bowman, PhD ("Dr. Bowman") and Ms. Cerminaro regarding Plaintiff Bella on the same date at 5:30 P.M.  Then Defendants started to tell Bella's parents what they allegedly had found out, but Cerminaro contacted plaintiff Racquel Wysocki ("Racquel") on her cell phone and then they had interviewed plaintiff Bella via zoom and taped it 2 hours before Bella's parents even knew about the situation. Bella was at the time a minor.

12. On January 4, 2021, Racquel had to do inquiries, digging, for information after she found out what Wardlaw, Dr. Bowman, and Cerminaro were not willing to give her, any information on why Bella was questioned for, and by her much investigation, Racquel came to discover the following:

(a). An online account was created on Instagram called "Wardlaw Uncensored", the website was created by a Wardlaw student (s), it was up for about 5 hours on January 6, 2021, and deleted on the same day. There was a screenshot of the page (Exhibit 1 attached hereto). The student(s) who created the account took videos from Bella's Tic Tok created a two second clip (IMG o293. Mov 542 KB) by way of their own editing for what was stated in the posting. (See Exhibit 2, the expert's Forensic video analysis and report of Justin Rosander, IAOC, IAEC. Of JSM Studios, LLC).

(b). The students and persons in question on making the Wardlaw uncensored account are the fictitious part of the fictitious designation defendants stated above and Austin Forsythe of Princeton.

(c).  These persons who made the "Wardlaw Uncensored" made a Tic Tok account in plaintiff Bella's name and called it ("BellaWycocky") with screen shots in the email that was not of Bella's account but were taken from it and the posting was not of Plaintiff's Bella's email account. The video went up on January 6, 2021, and it was deleted on January 6, 2021.

(d). On January 3, 2021, an email was sent to Wagner College in New York, and it was received by James Gibbons: Director jgibbons@wagner.edu and to the Soccer Coach philip.casella@wagner.edu, the email was sent from the email address NValcourt@wschool.org, a student at Wardlaw School who happened to be an African American. (See Exhibit 3 attached hereto).  In the fabricated video that was included along with the email, plaintiff Bella had braces which she hasn't had in 2 years, and it is a 2 second clip from snap chat which plaintiff Bella never had the

video in her possession at all. When the coach called plaintiff Bella, plaintiff and her parents had never seen such a video.

(e).  Bella has indications that one of the persons behind the video is Austin Forsythe ("Austin") for several reasons. First, plaintiffs have a recording from a child stating that it was Austin's plan "to do" her (Bella)

(f).  Second, on Nov 11, 2020, Austin Forsythe went through the AP room while Bella was signing for college saying how he was going to sabotage her with the video.  This was stated to her sister Gabby by Aum Mehta. Aum Mehta on information and belief may have been a participant in the posting of the clip, plaintiffs reserve the right to join him if upon discovery and further investigation this is confirmed.

(g).  Third, Bella called Austin on 1/4/2021 and asked him on speaker in front of Racquel why he would do her.  He had nothing to say. Austin Brother Dillion goes to a college in PA and that's where the school is telling Racquel that the email came from when traced.

13.    On January 4, 2021, Wardlaw questioned plaintiff Bella via zoom and taped her without permission of her parents and before they contacted her parents and let them know what was going on.

14.    On January 5, 2021, Bella's parents went to the police in their town, Rahway, to report the events and they called the parents on January 6, 2021, and said it was out of their jurisdiction. (Exhibit 4 attached hereto is the police report)

15.    On January 7, 2021, Bella and her parents had a meeting with Dr Bowman the principal of the upper school at Wardlaw. He shared with Racquel at that time the

actual email that was sent from their domain to Wagner College. At that point he had told Racquel that his son was very upset and at that point Racquel showed him that page on Instagram where Bella was bashed as a racist and her son was the first person that liked the internet picture "exposed" Bella.   Racquel also asked Dr. Bowman why he and the school did not call the police. He said they're a small school and that they do not call the police because they thought they could handle it.  Racquel told him this was criminal and a Sabotage and that it is someone in that school that did this to Bella. Dr. Bowman had no answers for Racquel nor to why the school domain was used for this unlawful harassment and why the school did not supervise and control the use of its domain allowing criminal activity to be conducted using its domain.  She repeatedly told him that this boils down to what was promised by Austin Forsythe from the threats that he worded explicitly in the AP room and to Simone Erachshaw, telling her how he was going to ruin Plaintiff Bella's life. There was harassment in the AP room, a crime, harassment by several students using the domain of the school and using matters that they perceived would negatively affect and annoy as well as to distress plaintiffs Bella, and her parents. Neither Dr. Bowman, Cerminaro, Webster, did anything to remedy and discipline this criminal conduct of the students that used the name of the Wardlaw to create the vehicle of harassment or used the domains for that purpose to perpetrate and perpetrated the crime. All these committed by Austin Forsythe, the fictitious designated person behind the "Wardlaw Uncensored" broadcasting and Nadya Valcourt. There has been no discipline of this criminal conduct of these students, no investigation of the students behind this criminal broadcast.

16.     There was no disciplining of these students even in the face of the "Wardlaw uncensored" publication for which Dr. Bowman stated that it disturbed his son Henry Bowman but, he was the first person to like the internet picture that "exposed" Bella in the vehicle of the crime. On information and belief, the school has done nothing to prevent these crimes and the perpetrators have not been disciplined. The persons behind Wardlaw Uncensored despite the use of the school domain had not been identified because a thorough and serious investigation would have discovered who were the culprit or culprits.

17.     Bella is a student with good grades and with a promising brilliant future and an outstanding Soccer player that has been marred by the unjust violatory and illegal nature of the defendants' actions. (See Exhibits 5, Exhibit 6 and Exhibit 16 respectively, attached hereto).

18.     The plaintiffs, Bella Parents, told the officials of the school, Dr. Bowman and Andrew Webster that the email two seconds clip looked to have been doctored, fabricated, but there was no action taken to examine the nature of that email message nor to investigate the source of it nor the motives of the broadcasters. There was no communication to plaintiffs of any such efforts. Prior to the J Hearing (Judging Board Hearing), the two hours interview of Bella all of which were without the presence of the parents and counsel for the family,  there was no investigation about the use of the school domain, the racist nature of the groups formed in the school, the harassment on Bella and the violations both by the school and the perpetrators of the provisions of the school handbook that is part of the enrollment contract of plaintiffs with the school.

19.   On 1/14/2021 at 7:00 P.M. Cerminaro called plaintiffs James and Racquel and said Bella has to get punished, so she has to go in front of a Judging board of 4 teachers and 4 students.  There have been no Judging Board Hearing for Austin Forsythe and/or Nadia Valcourt.

20.   There was no consideration about how long ago the alleged statements in the clip were made, evidence shows that it had to have been  at least two years before since in the posting of the statements in the short clip, Bella was wearing braces that she only had worn two years before, there was no consideration of the aims of the fabricators, nor of the fact that they were committing a crime, nor  was she ever confronted with the perpetrators and accusers that posted the clip or acted in broadcasting the clip beyond the school and continue broadcasting bullying and harassing remarks against Bella.

21.   There was not showing that at the time in which the alleged statements were made there was any disturbance and disruption of school discipline attributed to the statements allegedly made two year before nor conduct in the soccer team where Bella was captain that had to do with any racial connotation that produced a disruption created by her alleged racist statements. There was no showing that she promoted a climate of hate because of race, nor a separation of blacks and others as the school has in its middle-closed groups for a particular race, and that one of these groups or group has identified itself as formed on a race segregation basis for admission into it, an organization for which there has been no disciplining in the school for the promoters and organizers of it. This organization precludes others from participating in it solely on the basis of race as to constitute segregation just for the

color of your skin. There is nothing different between the association created and existing in the school and the segregation for riding in a bus that was a sign of ignominy in the south. There is nothing that has been done to prevent this type of conduct or association based primordially on the color of the skin as per their own criteria. Bella had been punished for statements that were doctored that at the time and for two years had no impact on the school environment, that were not spread by her but by harassing persons associated with an email posting where a racist student organization posted its invitations to join.  The school in imposing degrading and stigmatizing "disciplining" on Bella had not given the consideration to the validity of the clip nor to the harassment nature of the clips.  (See Exhibits 8 and 9 attached hereto).

22.   The conditions of discipline imposed by defendants Webster, Bowman, Cerminaro and Wardlaw to Bella and ad fortiori to her parents. (see Exhibit 22 attached hereto) amounted to criminal coercion and are in violation of Bella's constitutional rights under the First amendment to the US Constitution to the extend it is directly or indirectly applicable to the type of institution Wardlaw is and to the benefits that it receives from government and also violatory of the protection for freedom of speech under Article I, Paragraph 6, of the New Jersey State Constitution.

23.   On 2/1/2021 a J Board meeting was set up for the week Friday, February 5, 2021. Mrs. Cerminaro called the plaintiffs and asked who would be coming with Bella to the meeting.  Bella answered that Brandon McCall and Gabby Bella's sister will be attending the J Board meeting.  The parents of Bella were expressly excluded from attending the meeting as was also Bella's legal counsel. On information and belief,

the meeting only concentrated on getting Bella to admit wrongdoing, it was not a fact-finding meeting preceded by an investigation of the facts. Bella was present at that meeting under the threat of expulsion, no graduation, and already stigmatized and segregated from the school community.

24.     On 2/2/2021 Brandon McCall called Bella at 6:00 PM and said that Mrs. Cerminaro called his mother and talked her out of letting him join Bella in the J Board meeting.  Bella was not permitted to come with anyone for her defense that could question any facet of the charges against her.

25.     On 2/5/2021 -the school deterred the students from going to the J Board Meeting with Bella, so her sister Gabby had to go.  Plaintiffs have it all taped. They asked Bella questions and did not care that she never had the video nor did she ever post. This was done to her. Dr. Bowman and Mrs. Cerminaro said we would have a resolution within 2 to 3 days.

26.     On 2/23/2021 Mrs. Cerminaro called and said Defendant Webster would like to have a zoom call so Mr. Webster can talk to Bella since he has not spoken to her about the whole situation.

27.     On 3/7/2021 Plaintiffs received an email from Mr. Webster regarding the action of discipline that the school was going to take on plaintiff Wysocki. (See Exhibit 22 hereto). The impositions of discipline and the message constitute criminal coercion in which without a proper investigation, Bella was forced to accept punishments that were unrelated to her academic standing and the performance of academic standards required for graduation, nor to the performance of obligations undertaking by her nor to her outstanding achievement in athletics and other endeavors related to her

education but penalized for alleged statement that were interpreted as her views, even if they were not, without consideration to her true views, and without consideration of the context and complete expression of the events surrounding the statements that led to the doctored clip.

28.   The emailed letter of March 7, 2021, states that "Dr Bowman and Mrs. Cerminaro devoted a lot of time determining the facts of the case involving the video that was posted and distributed". There was no investigation about the integrity of the video or its completeness nor about who prepared it, nor about who distributed it and the motive for distribution, nor any effort of correlation of the statement with conduct both academically and in the soccer team, nor of the language used nowadays among young people when they address one another or how they designate themselves and other including self referentially. This statement was simply untrue as to the views of Bella and the imposed unjust punishment was also excessive and not commensurate with the alleged wrong. There was no showing of any disruption, negative racial consequences, disparagement, or disturbance occasioned by the alleged remarks in the clip in the two years from the date that allegedly the statements were made.

29.   The letter continues, "two years ago, you should have known better than to use that profanity and racial epithet in a person in the AP room (or anywhere for that matter). Now as a senior, you should have known once it was posted that you needed to immediately come forward to an advisor, counselor, or administrator to acknowledge that the video was real, that your words were hurtful and unacceptable.". The characterization already has the force of a conviction for a bad deed without determining the context and circumstances of the statement or if it was complete,

what was the intention, to whom was addressed, what was done or been done to Bella by the person addressed or if the clip was doctored and why the clip was posted after two years and the consequences of the statements during those two years and why the clip was broadcasted only when she was to graduate with the calculated destructive impact of this timing for the broadcasting of it. (Note that blacks on occasion will call a friend "hey, you nigger come here" or on some other context either in jest or friendly).

30.    The duty to take the above into consideration and make a serious investigation was on Dr, Bowman, Ms. Cerminaro, and the school officials, especially when there were family members involved or at least one official portrayed in the portal of dissemination. There was no statement in the letter of Webster referring to the conduct of Bella during the two-year period that showed that she engaged in any conduct that was the source of racial disruption, disruption, disturbance, motion, or turmoil. This doctored clip only surfaced on the occasion of graduation and her NLI with Wagner college posted by students of the defendants that had been permitted by them to continue with this conduct after the broadcasting and on occasion of it.

31.    At the meeting with Dr. Bowman in which he expressed that his son was in the picture of the Wardlaw uncensored posting and that his son was upset because of the posting, Plaintiff Racquel asked Dr. Bowman why the police was not called because of the criminal nature of the harassment against Bella and he stated that he would not go to the police but try to investigate and resolved the issue with the parties, however, Forsythe and Nadya Valcourt who had posted the clip and Valcourt sent it to Wagner with the express intent of bullying, harassing and sabotaging Bella were

not disciplined and attended all of the ceremonies that were prohibited to be attended by Bella. None of the perpetrators had been disciplined.

32.     Despite his repeated act of harassment to Bella including racist social or electronic media posting by him (see the racist attack on Bella in Exhibit 12 attached hereto), Forsythe had not been disciplined, despite engaging in the crime of harassment, but Bella was, despite his recorded statement that the whole affair of the clip was a joke on Bella, was disciplined by Wardlaw in total failure to investigate, in willful disregard of their duties to the plaintiffs, the defendants officers of Wardlaw in violation of duty toward Bella and her parents, and  intentionally, or in utter disregard to the said duties, and grossly negligently, inflicted  mental distress and psychological injuries the plaintiffs and caused directly damages and injuries resulting from their foul conduct including also financial and economic losses.

33.     The coercive letter of Andrew Webster imposing penalties on Bella also stated, "you should have expressed deep contrition, and a desire to apologize meaningfully and repair the harm it caused".  The email nor any of the documents nor the J Hearing revealed any harm done during the whole two years for the actual statements made when made in the context in which they were made for the purposes they were made and the circumstances that they were made that were never investigated and now there is the speculative harm done for the spreading of the doctored  by unpunished perpetrators of the two second incomplete and doctored clip that was not done by Bella but by the group of students behind the Wardlaw uncensored posting, the conduit of a racist allegedly black group condoned by the no disciplining of them by

Wardlaw even when the son of Dr. Bowman was "disturbed" by it and was one of the first to like the posting.

34. There has been no act of contrition nor has such act been demanded from them  and if there was an act of disruption was their harassing posting that waited two years to be revealed only on the event of Bella's graduation and scholarship to make an act of bullying harassment and outright destruction of her planned future with the connivance of Dr, Bowman, Webster, and the other participant in the Wardlaw scheme of the decision. These actions and omissions had caused emotional, mental distressed and psychological injuries to Bella.  (See Exhibit # 7 attached hereto). There has been no act of disciplining and of conveying to colleges where they are applying for admission or scholarship that the consequences follow them. Selective discriminatory unequal treatment of Wardlaw and the Wardlaw's associated defendants.

35. The plaintiffs reported the bullying and harassment to the Edison Police Department (see Exhibit 4 attached hereto) and upon discovery by way of this action, since by Dr.  Bowman and Wardlaw's responsible staff have not followed in their duty of disciplining, they will proceed parallel to this action to file criminal complaints for bullying, harassment, concealment of a criminal act, aiding and abetting, and accessories after the fact against all persons that discovery show participated and chose not to act.

36. Neither academically nor athletically the Defendant Wardlaw nor on the bases of excellence the Defendant Wardlaw and its agents had any legal ground to deny graduation, ostracize and follow up on the criminally coercive measures in violation

of the state constitutional rights of Bella. Contrition is a religious term, the demands forced upon her under the threat of no graduation and no diploma is not only an invasion and violation of US Constitution First amendment and Article I paragraph 6 of the New Jersey constitution but even more profoundly to her interior silent freedom to entertain her own independent thought. This is the USA not the Old Soviet Union where there was no freedom to think interiorly differently than authorities. (See Exhibits # 5 and # 6 the Grades of Bella and her soccer professes).

37.    It was not only to the events that were listed above in Exhibit # 15 that this criminally coercive measures aimed and deprived Bella to all of the rights to the awards and recognition that she won and were promised to her in the Rams awards of the school she was not even mentioned when she had broken every record possible in soccer for the school, attended every practice without failing for four years, scored 106 goals  and broke all records in Wardlaw ( see in Exhibit # 15 the letter of her mother to Defendant Webster and his lame answer to the GMC certificates and wanting to speak personally). The hush, hush of Dr. Bowman to crime, the hush, hush response to failure to investigate and coercive vindictive measures of defendant Webster are among the causes of Bella that is receiving psychological and medical treatment as a consequence of the actions of the defendants. The vindictive nature of Webster went to preclude the issuing of letters of recommendation from teachers to Bella. (See Exhibit # 18 attached hereto).

38.    The letter of imposition of defendant Webster also stated "We understand that the initial reaction when trouble arises is often to protect oneself and try to protect oneself and try to deny responsibility. However, you had a period of a month prior to the

Judiciary Board hearing and another month following it where you could have changed your initial course and acknowledge you had not been truthful". There was no initial course, Bella did not broadcast the doctored clip, there is no evidence of racist conduct by her and no evidence of negative effects since the alleged date of edited statements. The creators of any negative impact that the school now after two years says that is the consequence of the doctored statements, if any were not caused by Bella but by the broadcasters that are condoned for their actions by the failure of the school to discipline them.

39. Defendant Webster did nothing to find the truth. He did not do any work to find the persons that used the school's internet domain to disseminate the clip despite his avowal statement of the damage that this would do to the school functioning and its community and to the image of the school, he apparently did not hear the clip with keen ears because the last sounds are cut indicating other words following it that should had alerted him of the possible doctoring and editing of the clip.

40. Defendant Webster failed in his duty; he owed this duty to Bella. Wardlaw and its personnel also failed on this same duty owed to Bella.

41. Defendant Webster owed this duty to her parents. Wardlaw and its personnel owed this duty to her parents.

42. Defendants Webster, Wardlaw, and Wardlaw's personnel owed this duty to all students and parents of Wardlaw.

43. Defendant Webster failed on his duty as an educator in respect to the culture to which the students of Wardlaw are exposed, a culture where black rappers used the N- word freely and where there is the double standard in its usage that permits black when

referring to other blacks to use it but not others that are non-blacks. He failed in knowing and using these nuances not to be vindictive, coercive, and harsh, he failed in his duty as an educator. Defendant Webster and Wardlaw in not investigating context and bullying and harassment using race as a weapon, they failed in their duty to Bella and their parents in acting destructively not pedagogically. Wardlaw had failed in not disciplining reverse racism.

44. The Defendant Wardlaw and its agents, employees and servants, acted in total disregard of the injuries that it would cause Bella, recklessly, wantonly, gross negligent not fitting corrective measure to the alleged violation in the context of when, how and its effects that would be proportional to the alleged harm, but insisted and did not take into consideration the harm that such punitive non pedagogical recklessness would bring to Bella and her future since they communicated to the colleges where she applied this single incident and magnified its importance while seeking to hush the bullying and harassment that made the alleged statements to be spread in the electronic media using school internet domain.

45. Bella has been treated as an incorrect thoughts and beliefs "criminal" while the actual criminals that committed the bullying, sabotage and harassment had not been investigated and disciplined including the bringing of criminal charges against them.

46. Defendant Webster decided that in what was expressed by Bella there was no truth when she did not genuinely recall the events. Racquel expressed this in her e-mail of March 2, 2021 and brought to the attention of him that Bella had been targeted and bullied. It advised that the actions of the school and addressed the blockage of recommendations from her teachers that was promoted by the censorship of

defendant Webster and the resulting anxiety attacks, mental distress, post-traumatic effects, and psychiatric injury caused by the careless, reckless, grossly negligent, handling of these by the school and the school's servants, employees, agents and officers, with the consequential damages of such conduct. (See Exhibit # 27 attached hereto).

47.  Bella is undergoing treatment medical and psychological for the injuries directly and proximately caused by the defendants' wrongful actions and will continue receiving treatment in the future and her parents together with her had suffered, economic losses directly and proximately caused by the actions and omissions of the defendants.

48.  In addition to the anxiety, post traumatic syndrome, mental distress, and psychological injury the defendants caused her brilliant soccer career, academic scholarship, and athletic scholarship destruction, she has suffered compensatory damages and consequential damages and to the extent that the action or omissions that caused these damages were intentional and reckless she has suffered damages that deserve a punitive award. (See Exhibit # 7 attached hereto).

49.  The Wardlaw Hartridge Student and Parent's Handbook was made part of the enrollment contract with the parents that signed the enrollment contract which states that the parents had read the Handbook 2019-2020 (Exhibit # 10) and are made part of that agreement, the pertinent portion cited herein of the Handbook at page 16 bottom paragraph section on deportment and social expectations. Bella is an intended third-party beneficiary of the enrollment contract.

50.    The same Wardlaw- Hartridge Student and Parent's Handbook in its section on disciplinary policy, at page 15 states "we believe that our internal punishment should be commensurate with the violation and that when good standing is renewed the incident is complete. The punishment imposed on Bella was not commensurate with the alleged offense and despite her graduation the incident was never complete as what under the contract it should have been in violation of its expressed provisions.

51.    The Wardlaw Hartridge Student and Parent's Handbook has sections on Bullying, Cyber Bullying and Harassment at page 15 and 16 of the Handbook, the Defendant Wardlaw and its agents, servants, employees and officers have violated these sections of the handbook and are in breach of the contract of enrollment signed by the Plaintiffs James and Racquel and in breach of the same contract as to the intended third-party beneficiary of the contract Plaintiff Bella.

52.    The Wardlaw Hartridge Student and Parent's Handbook has a section on Social Network Policy/ Cyber Bullying including texting, the conduct of the "Wardlaw Uncensored" affecting the school community by threats, bullying, or harassing a community member or damaging the school reputation, the defendant Wardlaw school and its personnel are in breach of this section page 24. The actions and omissions in violation of this paragraph and pages by the school and personnel in failing to investigate discipline and prosecute the perpetrators of these bullying are in breach of the contract of enrollment with Plaintiffs where Bella is an intended beneficiary.

53.    The Wardlaw Hartridge Student and Parent's Handbook prohibits the use of electronic devices that capture images, sound or video at page 25 without written

permission from appropriate faculty or staff members, the school violated by the email of imposition of Webster all of the above and these provisions. The school, and its personnel are in breach of the contract of enrollment with the Plaintiffs, Bella is an intended beneficiary of the enrollment agreement.

54. The Wardlaw Hartridge Student and Parent's Handbook also has the provisions of the awards to be granted, the school failed to grant Bella the awards that were hers based on the failure to have a commensurate punishment to the alleged offense that were not conditioned on her alleged views but on her sports performance. The school and its personnel breached the enrollment contract in failing to grant the awards and recognition for Bella's outstanding performance damaging Plaintiffs and Plaintiff Bella as the intended beneficiary of the contract. (See Exhibit # 28 attached hereto). The persecution of Bella by the Defendant Wardlaw and its personnel went to the no provision when requested transcripts and providing them without indication that she had graduated. (See Exhibit # 28).

55. The Wardlaw Hartridge Student and Parent's Handbook (Exhibit # 10) at Page 15 states "In a learning environment, it is important to be able to have a free exchange of ideas", section on academic honesty.  Free exchange of ideas is not possible without freedom of speech. In penalizing free speech, the Wardlaw school violated the contract of enrollment and is in breach to plaintiffs and Bella as an intended beneficiary of the contract.

56. Freedom of speech is protected against the action violating or compulsorily oppressing it by private persons or institutions under Article I, Paragraph 6 of the New Jersey Constitution.

57. On 3/12/2021 The Plaintiffs had a zoom meeting with Coach Casella and Jennifer Sansevero of Wagner College where Bella has received an athletic scholarship, after the zoom meeting they said plaintiffs should have an answer by Sunday March 14, 2021, based on their investigation and the college investigation of the matter of the disciplining of Bella as transmitted to them by Wardlaw and as alerted to them by the message of Nadia Valcourt to Coach Casella (see Exhibit 14 attached hereto). The Plaintiffs audio recorded the conversation with Coach Casella and Sansevero. Nadia Valcourt is Black Senior Student and Jennifer Sansevero is married to a Black male.

58. On 3/18/2021 Isabella wrote Coach Casella and Jennifer Sansevero an email concerned and wondering about the status since they did not hear from them.

59. On 3/19/2021 Bella received an email stating Wagner College was withdrawing the scholarship due to bad conduct at her high school. It was followed by a longer, more detailed email on 3/21/2021. (See Exhibit 20, that also contains the copy of the National letter of intent granting her the scholarship that was withdrawn).

60. On 3/21/2021 Racquel sent a reply to Wagner College demanding how they came to such a harsh decision. (Exhibit 20)

61. On 3/21/2021 Racquel had to write Andrew Webster an email to ask why the school counselor was not sending transcripts that Bella requested to the college. (See Exhibit 13)

62. Despite constant request for Bella's grades transcripts during her submission for colleges applications there was a constant delay in providing the transcripts to the college and the plaintiffs, it surfaced on 3/23/2021 when plaintiff Racquel got an email back from one of the colleges counselor Chris Teare stating Mr. Webster told

him to hold off all communication to plaintiff Bella and to speak before with Mr. Webster about the disciplinary matter. (See Exhibit # 17 and # 21) Mr. Webster also intervened to preclude letters of recommendation that had to be processed through him. (See Exhibit 18).

63.    65. Bella was rejected from athletic recruiting by Saint Peter's University. (See Exhibit 26 attached hereto).

64.    On Monday, May 10, 2021, Racquel received an email from Lynn Pandure stating seniors' signs with their names for graduation will be at the driveway for pick up Friday May 14, 2021. Plaintiff Racquel went up there, but Bella had no sign. It required her father and mother to protest for Bella's name to be included, the ill will was manifested.

65.    On Friday 5/14/2021 Bella's father Plaintiff James Wysocki called Mr. Webster after Racquel went on Wednesday May 12, 2021, to see if Bella's sign was out there along with all the graduate's signs were.

66.    On 5/18/2021 Racquel wrote an email following up on the conversation Mr. Webster had with plaintiff James of May 14, 2021. Racquel got a reply on Wednesday May 19, 2021, with pictures that Bella's sign was finally placed out where all the other Graduates signs were. This was a week later than the time it had to be initially placed and it would have never been placed without the plaintiffs' intervention. (See Exhibit # 29 attached hereto)

67.    On 5/19/2021 when Bella applied for selection in the soccer team of Saint Peter's University in Jersey City the selecting personnel inquired about the video and wanted to hear her side out of the blue. James Wysocki saw the assistant soccer coach Nina

from Wardlaw Hartridge on 5/22/2021 and she said that Coach Romo from Wardlaw knew that Bella was talking to Saint Peters. This was the source of the questions about the video, Wardlaw as a consequence of Wardlaw's intervention, Bella was rejected by Saint Peter's University.

68.   On 5/19/2021 a coach from Union County called to inquire about the video, she had contact with the Wagner coach.

69.   On 5/22/2021 Bella's sign above was damaged; someone was trying to pull it out of the ground and damaged it. (See Exhibit # 29 attached hereto)

70.   The punishment continued even after graduation by giving Bella's transcript that she requested for applications to colleges with no indication that she had graduated from Wardlaw High School.

71.   The school had represented to plaintiffs that the punishment for the violation of the provisions for conduct of the student was to be commensurate with the violation not excessive and not vindictive in order to induce the plaintiffs to enroll in the school. This has been an ongoing representation during the time that plaintiffs enrolled Bella in the school. (Exhibit # 10)

72.   The school also represented that there would be not permitted in the school image and voice of recordings of their children without the permission of  the school authority and the consent of  the parents, it also represented that the school would not permit cyberbullying and bullying of  whatever nature of it, nor harassment, and that no groups based on race will be permitted to be formed among the students of the  Wardlaw, whether in the school or away from the school but with base on the school student population. The school represented to the plaintiffs that all students

were to be equally treated in respect to discipline for violations of the provisions in the school handbook. The school also represented that the school internet domain would be closely supervised to prevent the misuse by students and staff of that domain. The school represented that it would defend and promote free speech and thinking among the students. It also misrepresented that it assured the awards for academic performance and athletic prowess and all these representations were false. (Exhibit # 10)

73.   Those representations were false and had been shown to be false, the school had permitted the creation of a race-based group of black students, internet postings by this race-based group, the recording of images in the school and the publication by it of doctored edited clips broadcasted by use of the school domain. (See Exhibits # 8, 9 and 10)  These representations were made and continued to be made to plaintiffs with knowledge of their falsity with the objective that plaintiffs rely on them and it by the failure to discipline the broadcasting of this group condone and accepted the doctored clip as true and complete and tainted as a racist the Bella for an statement made years ago without any inquiry about what were her beliefs and tenets at the time in which the perpetrators committed the crime of bullying and harassment against Bella. This had caused the plaintiffs damages directly and proximately.

74.   The school and its personnel through Dr. Bowman, Andrew Webster and with the participation of the other defendants wrongfully interfered with the bestowal of the scholarship and NIL of Bella with Wagner College wrongfully causing the withdrawal by this college of the already granted benefit. This was a wrongful interference in a contractual relationship and a prospective benefit for the plaintiffs.

This wrongful interference was a compounding of the intentional, utter disregard, gross negligent and/or negligent conduct of the defendants Wardlaw, its officer and personnel against the plaintiffs causing damages proximately to the plaintiffs.

75.   Defendants Nadia Valcourt harassed Bella, bullied her, wrongfully and maliciously interfered, intentionally, with the agreement, NIL that Bella has entered with Wagner College and participated together with the other defendants in the damages inflicted to her, including the mental distress, psychological injuries, and all of her losses. Her actions and are part of the causation together with the actions of the other defendants in the overall damages caused to Bella in particular and to the Plaintiffs in their totality. (See Exhibit 14).

76.   Defendant Wagner College, without a proper investigation on the reliability of the information provided by the Wardlaw connected sources, the motives of the sources, their bias, interest, and corruption from which it made the decision and without an in-depth investigation of the facts adopted as true the decision and faulty criteria of defendant Wardlaw and its sources breaching its promises to Bella and causing proximately injury and damages to Bella. The defendant Wagner College owed the duty to Bella and her parents of a non-negligent investigation done by observing the duty of care of a college as a learning institution to truth of which is essentially issues of truth, free thought, and free speech. The withdrawal of the NIL stigmatized Bella and since its effects were in New Jersey violated as also Wardlaw violated her rights under Article I, Paragraph 6 of the New Jersey State constitution. The withdrawal of the NIL by Wagner constitutes a wrongful repudiation and rescission of the NIL. (See Exhibit 20)

77.   Implicit in the enrollment contract with Wardlaw and in the NIL are the covenants of good faith and fair dealing that were violated by both Wardlaw and Wagner College.

78.   Defendant Wardlaw exercised censorship on the speech of Bella in violation of the enrollment agreement and the free speech provisions of the New Jersey State constitution. (See Exhibit 23)

79.   The defendant Wardlaw violated the statutory provisions of N.J.S.A 18A:35-4.27 thorough 18A:37-28 and the plaintiff Bella was intended to be protected by this statutory framework, whether in its direct application or in its intention as a matter of public policy applicable also to private schools.

80.   On information and belief every other rejection of colleges for admission of Bella as a member of their Soccer teams was a consequence of information provided or caused by Wardlaw, its personnel, officers, and the perpetrators. This negative attitude to the talents of Bella was a veiled concern of the family that despite Racquel addressing it to the coach, the school failed to respond and address violation of the enrollment contract that made the handbook part of it. (Exhibit # 11)

81.   On information and belief, Wardlaw, its officers and personnel know or should know the identity of the members of the "Wardlaw uncensored" that posted the bullying and harassing and doctored clip and have either concealed or are involved in an effort no to discovered it because among other it is a criminal act.

82.   The defendant Forsythe maliciously, wrongfully, criminally and with the intend to sabotage and frustrate Bella's college career both academically and athletically and also to bully and harass her caused postings on the internet to achieve this aim in

pursuit of the same aim as the poster of the doctored clip. He had admitted, on information and belief, his authorship, and actions.

83.    Defendant Wardlaw, its officers, servants and personnel has engaged in cover up of criminal conduct of bullying, harassment, and fostering an organization or organizations that engaged in bullying and harassment and in not reporting this criminal activity to the proper authority, such as the police. Furthermore, there has been no measure to find the members of the racist organization of black students that is evidence of the festering racism of the school environment. (See Exhibit 25). Nor any efforts with results of disciplining the members. There has been selective and unequal treatment of the student as to the rules as expressed in the handbook also in violation of the equal treatment express or implicit in the handbook.

84.    86. Defendant Aum Mehta was one of the disseminators or participants in the creation of the doctored clip and as such caused the injuries and damages to the Plaintiffs and particularly to Bella, maliciously, intentionally, and criminally.

85.    All of Defendants are severally and jointly responsible and liable for all of the damages caused to the plaintiffs and more particularly to Bella that were caused directly and proximately by the wrongful actions and omissions.

## CLAIMS FOR RELIEF

## COUNT I

## (BREACH OF CONTRACT AGAINST WARDLAW)

86.    Plaintiffs incorporate all prior paragraphs of the second amended complaint as if fully set forth herein.

87. Defendant Wardlaw breached the contract of enrollment with plaintiffs and the provisions of the School Handbook that are incorporated into the contract.

88. The plaintiffs suffered damages directly and proximately caused by the breach.

**WHEREFORE**, plaintiffs demand judgment against Wardlaw for damages, compensatory, consequential, expenses, cost of litigation and reasonable attorney's fees and such other remedies as the court may deem just and equitable.

## COUNT II

## (VIOLATION OF THE PLAINTIFF'S BELLA RIGHT TO FREE SPEECH AGAINST WARDLAW, DR BOWMAN, CERMINARO, AND WEBSTER, COLLECTIVELY THE WARDLAW DEFENDANTS FOR THE PURPOSE OF THIS COUNT)

89. Plaintiffs incorporate all prior paragraphs of the second amended complaint as if fully set forth herein.

90. The Wardlaw defendants in conscious disregard to Plaintiff Bella's right to freedom of speech censored and punished him for exercising her Article I, Paragraph 6 of the New Jersey State constitution right to free speech, punishment her for such act that are part of the representation that the school and personnel were to observe in accord with the handbook, when such act was not an abuse of her rights to free speech.

91. By said conduct Defendants violated Plaintiff Bella's right to her constitutionally protected free speech and freedom of association so guaranteed by the New Jersey State Constitution.

92. As a proximate consequence thereof Plaintiff Bella has been injured, continues to be injured, and will be permanently harmed.

93.   Defendants' conduct was a substantial factor in causing proximately to Plaintiff
      Bella's harm.

**WHEREFORE,** Plaintiff Bella demands judgment against the Wardlaw Defendants jointly and
severally for damages compensatory, consequential, punitive, cost of litigation and reasonable
attorney's fees and such other remedies as the court deems just and equitable.

<u>COUNT III</u>

**<u>INTENTIONAL AND WILLFUL DISREGARD, GROSS NEGLIGENCE VIOLATION
OF THE PLAINTIFF CONSTITUTIONAL RIGHT UNDER THE NEW JERSEY
CONSTITUTION, AGAINST ALL DEFENDANTS EXCEPT WAGNER COLLEGE)</u>**

94.   Plaintiffs incorporate all prior paragraphs of the second amended complaint as if fully
      set forth herein.

95.   Defendants intentionally, willfully, or, gross negligent, or negligently, wrongfully,
      capriciously, arbitrarily, and in conscious disregard abrogated the rights of Bella
      under Paragraphs 1, 5 and 6 of the guarantees of the Article I of the New Jersey State
      Constitution.in particular her right to freely speak, write and publish her sentiments
      on all subjects which no policy, regulation, code, or law may restrain or abridge as
      guaranteed by Article I, Paragraph 6 to the New Jersey Constitution, deprived her of
      her earned and thus vested right to participate in her graduation ceremony, similarly
      revoked her earned and thus vested right to VIP reservations at said ceremony, and
      effectively expelled her there without any right to be heard administratively or
      judicially nor to appeal in any forum depriving her of counsel and even of the
      presence of her plaintiffs parents subjecting a minor to a an adjudicative process

without the present of her parents all in violation of Article I, Paragraphs, 1, 2, 5, and 6 of the said constitution.

96.     By said conduct defendants violated Plaintiffs Bella's right to her civil rights and to the rights guaranteed in the same constitution to life and property.

97.     As a proximate consequence thereof Plaintiff Bella has suffered damages proximately caused by the violation of her constitutional rights, she has been injured, continues to be injured, and will be permanently harmed.

98.     Defendants' conduct, as pleaded above, was a substantial factor in causing Plaintiffs' harm.

**WHEREFORE,** the plaintiffs demand judgment against the defendants for damages compensatory, consequential, punitive, cost of litigation and reasonable attorney's fees and such other remedies as the court may deem just and equitable

## COUNT IV

## (N.J.S.A 18:6A-2(B) AND TITLE VI OF THE CIVIL RIGHT ACT OF 1964)

99.     Plaintiffs incorporate all prior paragraphs of the second amended complaint as if fully set forth herein.

100.    Defendant Wardlaw and the Wardlaw defendants as identified above in prior counts know that under the statute of New Jersey a private school is a non-public school that is in compliance with the provisions, guidelines, and criteria of Title VI of the Civil rights Act of 1964. The said guidelines and criteria forbid any de jure or de facto policy that foster or tolerate segregation whether directly or indirectly and the said defendants have intentionally, willfully, wantonly, gross negligent, in willful disregard of the guidelines and criteria tolerated and failed to stop and discipline,

members of the student body that have created an organization based on race that was instrumental in the  wrongfully, capriciously, arbitrary bullying and harassment of Bella and in the sabotaging of her college acceptance into athletic programs and scholarship violating the legal conditions of its operation and causing proximately the damages suffered by Bella and her parents. This conscious disregard of the guidelines and the toleration and failure to investigate ended up with the contradictory seeking to enforce and the enforced imposition on Bella that subjected her to disciplinary sanctions in violation to the measured approach that they represented falsely and that any way they breached as stated in the Student and Parents Handbook and in doing so deprived her of her earned and thus vested right to participate in her graduation ceremony, similarly revoked her earned and thus vested right to VIP reservations at said ceremony, and effectively expelled her therewith without any right to be heard with counsel or her parents administratively or judicially nor to appeal in any forum and also deprive her from the NIL scholarship to Wagner College, as well as the awards and recognitions in ceremonies for her athletic prowess, by said conduct, also defendants violated Plaintiffs rights under the New Jersey Education Code.  On information and belief, the defendant Wardlaw receives benefits from the educational provisions established by rule and regulation by the State of New Jersey, the Exhibit # 19)

101.  As a proximate consequence thereof Plaintiff Bella and her parents have been injured, and Bella continues to be injured and will be permanently harmed.

102.  Defendants' conduct, as pleaded above, was a substantial factor in causing Plaintiffs' damages.

**WHEREFORE,** Plaintiffs ask the Court:

(1) To enter judgment against defendants jointly and severally;

2.   To award Plaintiffs damages, compensatory, consequential, punitive costs of litigation and reasonable attorney's fees and such other remedies as the court might find fit

## COUNT V

## (NEGLIGENT INFLICTION OF MENTAL, EMOTIONAL DISTRESS AND PSYCHOLOGICAL INJURIES)

103.   Plaintiffs incorporate all prior paragraphs of the second amended complaint as if fully set forth herein.

104.   The defendants Wardlaw, the individual Wardlaw defendants owed a duty of care to the Plaintiffs, and more particularly to Bella.  These defendants failed to observe their duty of care by commission and omissions.

105.   As a direct consequence of that failure and the concomitant vindictive excessive and unmeasured and not commensurate imposition of sanctions on Bella by the Wardlaw defendants (Wardlaw, Dr. Bowman, Cerminaro, Webster, school personnel and servants), and the plaintiff Bella have suffered mental, emotional distress and psychological injuries proximately caused by this negligence that have required, is requiring, and will require medical and psychological attention, treatment, and therapy.

106.   Defendant Andrew Webster acting within the scope of his duties for Wardlaw and on information and belief  under the direction of Dr. Bowman  with willful disregard of the rights of Bella inflicted on her mental distress by his series of vindictive wholly

without measure imposition of sanctions on Bella, and his continuing restrictions on
the issuing of transcripts, on the issuing of letter of recommendation , and on
information and believe his communication to the colleges where she applied with his
knowledge, and all of his actions imposed conditions to allow her to graduate, and all
of the coercive actions, when this is coupled with the failure to investigate of this
team of defendants (Bowman, Cerminaro, Webster), their intervention to avoid the
presentation of witnesses and the exclusion of family and counsel from
the  adjudication proceeding that only sought admission with contrition and the
acceptance of all conditions under the fear of no graduation and an act of humiliating
contrition by which Webster exercised the lack of measure that would make any of
his "penalties" wholly disproportionate to the alleged act committed.

**WHEREFORE**, Plaintiff Bella demands judgment against these defendants jointly and
severally, compensatory, consequential, cost of litigation, reasonable attorney's fees, and such
other remedies as the court may find just and equitable.

## COUNT VI

## (INTENTIONAL INFLICTION OF MENTAL, EMOTIONAL DISTRESS AND PSYCHOLOGICAL INJURIES)

107.  Plaintiffs repeat and incorporate the prior allegations in the complaint as if stated
herein at length.

108.  Defendants Austin Forsythe and Nadia Valcourt intentionally for the purpose of
damaging the prospects of Plaintiff Bella for further education and for her career
bullied and persecuted her using the Wardlaw domains and going to Wagner College
in total disregard of the truth and of the damages and injury that would cause to

Plaintiff Bella with no valid purpose in their conduct. This conduct is outrageous, malicious, and with evil intention and proximately caused plaintiff Bella psychological injuries and mental distress.

109. Defendants Austin Forsythe and Nadia Valcourt used the unsupervised use of the internet domain of the Wardlaw School to upload a doctored video of Plaintiff Bella and distributed outside of the Wardlaw as in the case of Nadia Valcourt submitted to Defendant Wagner College, for the purpose of prosecuting and bullying plaintiff Bella with the consequential mental distress and psychological damages caused to her. And the damages to her prospective and existing benefits awards, grants, and scholarships.

110. As a consequence of this prosecution and the steps carried by the defendants Austin Forsythe and Nadia Valcourt to destroy plaintiff's future, Bella has suffered injuries that required, are requiring and will require, caused proximately, by the wrongful conduct of the defendants. In addition, both the Parents of Bella and Bella herself had suffered economic losses caused by the defendants' actions in wanton disregard of the harm done to plaintiffs.

**WHEREFORE**, plaintiffs demand judgment against the defendants jointly and severally for damages, compensatory, consequential, punitive, cost of litigation, reasonable attorney's fees and such other remedies as the court deems just and equitable.

## COUNT VII

## (BREACH OF CONTRACT AGAINST WAGNER COLLEGE)

111.   Plaintiffs repeat the prior allegations in the complaint as if stated herein at length.

112.   Defendant Wagner College entered into an Athletics Award Agreement with Isabella Wysocki for the Sport Women's Soccer on November 11, 2020, as signed by Theresa Weimer and Walter C. Hameline from Wagner College, the said award agreement was executed and signed by Bella and Racquel on November 11, 2020. The said agreement has conditions for the reduction or cancellation of the grant applicable to Bella as follows:

(a) I become ineligible for intercollegiate competition,

(b) I fraudulently misrepresent any information in my application, letter of intent or financial aid agreement,

(c) I engage in serious misconduct that brings disciplinary action from the institution

(d) I engage in misconduct leading to an arrest and the Athletic Department determines that under the circumstances, it would be inappropriate to continue my financial aid.

(e) I voluntarily withdraw from the sport for personal reasons.

113.   There was no breach of the agreement conditions for the grant by the plaintiffs because there was no disciplinary action for misconduct by the plaintiff that brought disciplinary action by defendant Wagner College because the plaintiff did not engage in any misconduct that would bring disciplinary action by Wagner College during the period as contemplated in the agreement of November 11, 2020.

114. The plaintiff had not committed any act during the existence of agreement with defendant Wagner College  and at the college or during the period contemplated in the agreement and she had not fraudulently misrepresented any information in her application, letter of intent or financial aid agreement, in a word there was no violation of the conditions for the grant on the plaintiffs' part and even the inapplicable reasons for the denial that are not listed under the conditions of the grant were not investigated by defendant Wagner College and Wagner in the letter of withdrawal and cancellation cited only the words provided by Defendant Wardlaw without the investigation of events and further investigation of the facts the same.

115. The parents of Bella were intended beneficiaries of the NIL agreement with Wagner. Her mother was a signatory to the agreement see Exhibit 20 last page to this second amended complaint.

116. Wagner College as a higher education institution is based on free statement of thought and free speech.

117. The NIL was based on academic performance and athletic performance no on the subjective views of Bella, Wagner without investigation of the true views of Bella and without consulting her about the said view repudiated the agreement with Bella and her family on grounds that were not those on which the agreement with her was based without any valid serious inquiry about the truth of the charges and in violation of her constitutional rights under the New Jersey Constitution. The withdrawal and repudiation of the NIL breached the contractual agreement between Wagner and the Plaintiffs, and the Plaintiffs have suffered damages caused directly and proximately by this breach.

**WHEREFORE,** Plaintiffs demand judgment against Wagner College for damages compensatory, consequential and for cost of litigation and reasonable attorney's fees and such other remedies as the court may deem just and equitable.


## COUNT VIII

## (INTERFERENCE WITH PROSPECTIVE ECONOMIC, EDUCATIONAL AND FINANCIAL RELATIONSHIP)

118.    Plaintiffs repeat the prior allegations in the complaint as if stated herein at length.

119.    The defendants Wardlaw , the Wardlaw defendants, and the Wardlaw personnel acting within the scope of their duty as well as Nadia Valcourt, intentionally interfered with the opportunity and prospective by refusing or interfering with the relationship of the plaintiff Bella with colleges where she sought to be participate in their athletic programs by refusing or limiting letters of recommendation and controlling the issuing of them and in the case of Nadia Valcourt by actually intervening for the blocking and denial of such benefits as it happen with Wagner.

120.    In addition, Wagner provided, on information and belief, as it happened with Wagner, information that it provided after the violation stated above of the contractual obligations and the negligent infliction by its personnel of the emotional, mental, and psychological injuries to the plaintiff Bella that resulted in the denial of prospective benefits with colleges to plaintiffs.

121.    As a consequence of the wrongful interference with the prospective and already existing interest and relationship the Plaintiffs suffered directly and proximately damages caused by these defendants' actions.

**WHEREFORE,** plaintiffs demand Judgment against the Wardlaw individual defendants as well as Nadia Valcourt for damages, compensatory, consequential, punitive, cost of litigation and reasonable attorney fees

## DEMAND OF JURY TRIAL

Plaintiffs demand trial by jury on all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R.4:25-4, Tomas Espinosa, Esq. is hereby designated as trial counsel.


Dated: 07/16/2022          */s/     **Tomas Espinosa**
                           Tomas Espinosa, Esq.
                           Attorney for Plaintiffs


## CERTIFICATION PURSUANT TO R. 4:5-1 AND RULE 1:38-7(b)

The undersigned hereby certifies that this matter is not the subject of any other action pending in any court or arbitration proceeding. The undersigned hereby certifies that he knows of no other parties who should be joined in the action at this time.

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: 07/16/2022               */s/ Tomas Espinosa*
                                Tomas Espinosa, Esq.
                                Attorney for Plaintiffs

**Tomas Espinosa, Esq.**
**Att. Id. No. 025691985**
**8324 Kennedy Blvd. 2nd Floor**
**North Bergen, NJ 07047**
**Tel: (201) 223-1803**
**E-Mail te@lawespinosa.com**
**Attorney for Plaintiffs Isabella Wysocki, James Wysocki and Racquel Wysocki**

| | |
|---|---|
| Isabella Wysocki, James Wysocki and Racquel Wysocki<br><br>Plaintiffs<br><br>v.<br><br>The Wardlaw- Hartridge School, Christine Cerminaro, Robert M. Bowman, PhD Andrew Webster Austin Forsythe Wagner College, Nadia Valcourt, John Does (a fictitious designation of 1-10 male persons) Jane Doe (a fictitious designation of females 1-10)<br><br>Defendants | **UNITED STATES DISTRICT COURT**<br><br>   **FOR THE DISTRICT OF NEW JERSEY**<br><br>   CIVIL ACTION<br><br>**Civil Action No.**<br>***2:21-cv-14132 (WJM) (CLW)***<br><br><br>**VERIFICATION** |

I, Isabella Wysocki, under oath hereby swear, that the foregoing statements made by me are true and that this action has been brought in good faith and without collusion.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated 07/16/2022                              /s/ ***Isabella Wysocki***
                                                              Isabella Wysocki

Sworn and executed before me on 07/16/2022

***/s/ Tomas Espinosa***
Tomas Espinosa, Esq.
Attorney at Law in the State of New Jersey

**Tomas Espinosa, Esq.**
**Att. Id. No. 025691985**
**8324 Kennedy Blvd. 2nd Floor**
**North Bergen, NJ 07047**
**Tel: (201) 223-1803**
**E-Mail te@lawespinosa.com**
**Attorney for Plaintiffs Isabella Wysocki, James Wysocki and Racquel Wysocki**

| | |
|---|---|
| Isabella Wysocki, James Wysocki and Racquel Wysocki<br><br>Plaintiffs<br><br>v.<br><br>The Wardlaw- Hartridge School,<br>Christine Cerminaro,<br>Robert M. Bowman, PhD<br>Andrew Webster<br>Austin Forsythe<br>Wagner College,<br>Nadia Valcourt,<br>John Does (a fictitious designation of 1-10 male persons)<br>Jane Doe (a fictitious designation of females 1-10)<br><br>Defendants | **UNITED STATES DISTRICT COURT**<br><br>**FOR THE DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION<br><br>**Civil Action No.**<br>***2:21-cv-14132 (WJM) (CLW)***<br><br>**VERIFICATION** |

I, James Wysocki, under oath hereby swear, that the foregoing statements made by me are true and that this action has been brought in good faith and without collusion.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated 07/16/2022                               /s/ ***James Wysocki***
                                                              James Wysocki


Sworn and executed before me on 07/16/2022


***/s/ Tomas Espinosa***
Tomas Espinosa, Esq.
Attorney at Law in the State of New Jersey

**Tomas Espinosa, Esq.**
**Att. Id. No. 025691985**
**8324 Kennedy Blvd. 2nd Floor**
**North Bergen, NJ 07047**
**Tel: (201) 223-1803**
**E-Mail te@lawespinosa.com**
**Attorney for Plaintiffs Isabella Wysocki, James Wysocki and Racquel Wysocki**

| | |
|---|---|
| Isabella Wysocki,<br>James Wysocki and<br>Racquel Wysocki<br><br>Plaintiffs<br><br>v.<br><br>The Wardlaw- Hartridge School,<br>Christine Cerminaro,<br>Robert M. Bowman, PhD<br>Andrew Webster<br>Austin Forsythe<br>Wagner College,<br>Nadia Valcourt,<br>John Does (a fictitious designation of 1-10 male persons)<br>Jane Doe (a fictitious designation of females 1-10)<br><br>Defendants | **UNITED STATES DISTRICT COURT**<br><br>**FOR THE DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION<br><br>**Civil Action No.**<br>***2:21-cv-14132 (WJM) (CLW)***<br><br>**VERIFICATION** |

I, James Wysocki, under oath hereby swear, that the foregoing statements made by me are true and that this action has been brought in good faith and without collusion.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated 07/16/2022                         /s/ ***Racquel Wysocki***
                                              Racquel Wysocki

Sworn and executed before me on 07/16/2022

***/s/ Tomas Espinosa***
Tomas Espinosa, Esq.
Attorney at Law in the State of New Jersey