UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISABELLA WYSOCKI, JAMES WYSOCKI, and RACQUEL WYSOCKI,<br><br>Plaintiffs,<br><br>v.<br><br>THE WARDLAW-HARTRIDGE SCHOOL, CHRISTINE CERMINARO, ROBERT M. BOWMAN, ANDREW WEBSTER, AUSTIN FORSYTHE, WAGNER COLLEGE, NADIA VALCOURT, JOHN DOES 1-10, and JANE DOES 1-10,<br><br>Defendants. | Civ. No. 2:21-cv-14132 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

In January of 2021, Plaintiff Isabella Wysocki ("Isabella")[1] was a senior high school student at The Wardlaw-Hartridge School when a video clip circulated of her using a racial epithet. The school disciplined Isabella, and she was not permitted to attend in-person classes or activities for the remainder of the academic year, nor walk in the graduation ceremony. Wagner College, where Isabella had signed a National Letter of Intent to play for the college's soccer program, likewise rescinded its offer of admission and scholarship. Isabella, along with her parents Plaintiffs James and Racquel Wysocki (collectively, "Plaintiffs"), bring a variety of claims against The Wardlaw-Hartridge School, certain of its administrators, Wagner College, and two students alleged to have disseminated the clip.

This matter is now before the Court on four motions: a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6) filed by Wagner College, ECF No. 45, two motions for judgment on the pleadings pursuant to Rule 12(c) filed by the Wardlaw-Hartridge School and its administrators, Defendants Christine Cerminaro, Robert Bowman, and Andrew Webster (collectively, "Wardlaw Defendants"), ECF Nos. 49, 53, and a motion for judgment on the pleadings pursuant to Rule 12(c) filed by Defendant Austin Forsythe ("Forsythe"), a former student at the Wardlaw-Hartridge School, ECF No. 54. After careful

---

[1] We refer to Isabella Wysocki by her first name solely to differentiate her from her parents, who are also plaintiffs in this action.

consideration of the parties' submissions and for the reasons set forth below, the Wardlaw Defendants' Rule 12(c) motion, ECF No. 53, is **GRANTED IN PART** as to Plaintiffs' federal claim and will be addressed by the state court as to Plaintiffs' pendent state law claims. The other three pending motions—Wagner's motion to dismiss, ECF No. 45, the Wardlaw Defendants' remaining Rule 12(c) motion, ECF No. 49, and Forsythe's Rule 12(c) motion, ECF No. 54—will be addressed by the state court.

## I.   BACKGROUND

The Court initially set forth the underlying facts and procedural history of this matter in its previous opinion published on June 16, 2022. *See* Opinion, ECF No. 38 ("*Wysocki I*"). The following version of events is derived from *Wysocki I*, along with Plaintiffs' Second Amended Complaint and the exhibits referenced therein and attached thereto. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). For the purposes of resolving the instant motions, the Court is bound to accept Plaintiffs' factual allegations as true and view them in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

### A. The Video Clip

Isabella was a member of the Class of 2021 at The Wardlaw-Hartridge School ("Wardlaw"), a private high school in Edison, New Jersey. Second Amended Complaint ("SAC") ¶ 3, ECF No. 40. She had been accepted into Wagner College ("Wagner" or the "college") in New York and had signed a National Letter of Intent ("NLI") to play on the college's soccer team. *See* SAC Ex. 20.

In her senior year at Wardlaw, a video clip of Isabella using a racial epithet was circulated and brought to the attention of Wardlaw and Wagner administrators. The Second Amended Complaint omits any restatement or complete description of the video's contents or of Isabella's exact remarks, but the allegations and exhibits suggest the video is a two-second clip, recorded approximately two years prior to it being circulated, of Isabella using the n-word.[2] Wardlaw student Defendant Nadia Valcourt ("Valcourt") emailed the video clip to Wagner's Director of Admissions and the head coach of its soccer program on January 3, 2021. SAC ¶ 12(d). Three days later, the video clip was posted on an Instagram account called "Wardlaw Uncensored" and a TikTok account called "BellaWycocky," and then deleted that same day. *Id.* ¶ 12(a)-(c). Wardlaw student Defendant Austin Forsythe ("Forsythe") participated in creating the account or posting the clip. *Id.* ¶¶ 12(e)-(f), 15.

### B. Wardlaw's Investigation

---

[2] Wagner submitted to the Court, as an exhibit to its motion to dismiss, a USB flash drive containing a copy of the video clip file that Wagner received via email. *See* Bartolomeo Cert. ¶ 2, ECF No. 12-1. As a motion to dismiss tests only the legal sufficiency of the pleading, however, the Court does not consider or make any determination as to the video's contents at this juncture.

Wardlaw, through its administrators, Defendants Christine Cerminaro, Robert Bowman, and Andrew Webster, met with or spoke to Isabella and her parents several times about the video clip over the next three months. *See* SAC ¶¶ 11, 13, 15, 18-19, 23, 25-26, 31. On at least one occasion, Wardlaw questioned Isabella over Zoom and recorded it but did not notify her parents. *Id.* ¶¶ 11, 13. On another occasion, Wardlaw required Isabella to appear before a "Judging board" comprised of teachers and students but did not allow her parents or her lawyer to attend the hearing. *Id.* ¶¶ 19, 23-25. Wardlaw did not investigate or hold a similar hearing for Forsythe, Valcourt, or any other students suspected to be involved with circulating the clip, despite Plaintiffs' complaints to administrators that Forsythe and other students were bullying and harassing Isabella. *Id.* ¶¶ 15-16, 18-19. Wardlaw also did not investigate the video clip's authenticity, despite Plaintiffs expressing to administrators that the clip appeared to have been doctored or fabricated. *Id.* ¶¶ 18, 28.

Wardlaw's investigation culminated on March 7, 2021, when it sent Isabella a formal letter detailing its findings and explaining its decision to discipline her. *Id.* ¶ 27. Finding that Isabella failed to immediately acknowledge that the video was real, "fail[ed] to be truthful with the Judiciary Board," and had "belatedly taken responsibility and expressed the desire to learn and make amends," Wardlaw imposed certain disciplinary sanctions on Isabella, but did not expel her. *Id.* ¶¶ 29, 33, Ex. 22. Wardlaw prohibited Isabella from attending her classes, school events of any kind, and her graduation ceremony; gave her assignments to complete from home with an altered set of academic requirements; and required her to see a therapist. *Id.* If she satisfied these conditions, Wardlaw would issue her diploma at the end of the school year. *Id.* Wardlaw and its administrators penalized Isabella in other ways throughout the rest of the school year by withholding her honors and awards and delaying the release of her transcript and letters of recommendation for college applications. SAC ¶¶ 37, 61-62.

### C. Wagner's Investigation

On March 12, 2021, several days after Wardlaw issued its disciplinary letter, Plaintiffs videoconferenced with a Wagner administrator and the head of Wagner's soccer program to discuss the video. *Id.* ¶ 57. Wagner emailed Isabella on March 19 and again on March 22, notifying her it was rescinding her Athletics Award Agreement and voiding the NLI "due to her engaging in . . . serious misconduct." SAC ¶ 59, Ex. 20. Specifically, "[d]uring the course of [their] meeting on Friday, March 12th, Isabella admitted to using a racial epithet and that it was her in the video." SAC Ex. 20.

## II. PROCEDURAL HISTORY

Plaintiffs commenced this action in the Superior Court of New Jersey, Law Division, Union County, on July 13, 2021. Notice of Removal ¶ 1, ECF No. 1. Defendants

3

Wardlaw, Christine Cerminaro, Robert Bowman, and Andrew Webster (collectively, the "Wardlaw Defendants") timely removed the case, invoking this Court's federal question jurisdiction over the action by virtue of Plaintiffs' federal cause of action under Title VI of the Civil Rights Act of 1964. *Id.* ¶¶ 7, 10. Wagner moved to dismiss the First Amended Complaint. ECF No. 12. The Wardlaw Defendants were granted leave and moved for judgment on the pleadings after initially answering the First Amended Complaint. *See* ECF Nos. 5, 27, 28. On June 16, 2022, the Court granted Wagner's motion to dismiss and granted in part and denied in part the Wardlaw Defendants' motion for judgment on the pleadings. *See* Opinion, ECF No. 38 ("*Wysocki I*").

On July 16, 2022, Plaintiffs filed its Second Amended Complaint asserting the following eight claims: (I) breach of contract as to Wardlaw; (II) violation of Isabella's right to freedom of speech under the New Jersey State Constitution as to the Wardlaw Defendants; (III) intentional and willful disregard or gross negligence as to all Defendants except Wagner; (IV) violations of Title VI of the Civil Rights Act of 1964 as to the Wardlaw Defendants; (V) negligent infliction of emotional distress as to the Wardlaw Defendants; (VI) intentional infliction of emotional distress as to Defendants Forsythe and Valcourt; (VII) breach of contract as to Wagner; and (VIII) interference with prospective economic, educational, and financial relationships as to the Wardlaw Defendants and Defendant Valcourt. *See* SAC ¶¶ 86-121, ECF No. 40.

Wagner again moved to dismiss the claims asserted against it. ECF No. 45. The Wardlaw Defendants answered the SAC, ECF No. 43, but subsequently filed two separate motions for judgment on the pleadings, ECF Nos. 49, 53. Forsythe answered the SAC and asserted a crossclaim against all Defendants for contribution and indemnification, ECF No. 44, and then moved for judgment on the pleadings, ECF No. 54. As to Valcourt, an Affidavit of Service reflects that a copy of the summons and the First Amended Complaint were successfully served on a member of her household on July 19, 2021, but to date she has not entered any appearance in this case. Notice of Removal Ex. C, at 4, ECF No. 1.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Federal Rule of Civil Procedure 12(c) provides for similar relief by allowing a party to move for judgment on the pleadings, though only after the pleadings are closed and early enough not to delay trial. "A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citation omitted).

Accordingly, in adjudicating either motion, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). And the Court must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint's factual allegations need not be detailed, but they must contain sufficient factual matter to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Finally, while the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6), or as here, both a Rule 12(b)(6) and a Rule 12(c) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230.

## IV.   DISCUSSION

The Court addresses the Wardlaw Defendants' second Rule 12(c) motion first. Wardlaw Defs.' Mot. J. Pleadings ("Wardlaw Mot."), ECF No. 53. In their motion, the Wardlaw Defendants seek the dismissal of certain claims by Isabella Wysocki's parents, Racquel and James Wysocki (together, "Wysocki Parents"), but not Isabella herself.[3] Specifically, the Wardlaw Defendants argue that the Wysocki Parents: (1) lack standing to bring a state constitutional claim on Isabella's behalf; (2) are not owed a duty of care from the Wardlaw Defendants and thus cannot prevail on their claims for gross negligence and negligent infliction of emotional distress; and (3) cannot prevail on their Title VI claims because they have not alleged an injury nor any facts that support a showing of discrimination. Wardlaw Mot. at 6-7.

Because it is the sole federal claim asserted by Plaintiffs, the Court will assess the Title VI claim first.[4]

### A. Title VI of the Civil Rights Act of 1964

---

[3] The Wardlaw Defendants explicitly write in a footnote that "[f]or purposes of clarity, [the Wardlaw Defendants] are not seeking dismissal of the claims by Isabella Wysocki." Wardlaw Mot. at 6 n.1.

[4] The Court notes that Plaintiffs list both "N.J.S.A. 18:6A-2(B)" and "Title VI of the Civil Right[s] Act of 1964" under Count IV. The Court has not been able to identify the New Jersey statute cited by Plaintiffs and it is not further relied on in the Complaint. Thus, the claim will be construed solely under Title VI.

5

Under Title VI of the Civil Rights Act of 1964, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Though not explicitly stated, Plaintiffs appear to assert a theory of liability under Title VI based on an allegedly racially hostile environment at Wardlaw. Specifically, Plaintiffs allege that the Wardlaw Defendants failed to stop and discipline "members of the student body that . . . created an organization based on race" who were instrumental in the "bullying and harassment" of Isabella, which ultimately subjected her to disciplinary sanctions at Wardlaw and "sabotage[ed]" her college acceptance and scholarship. SAC ¶ 100.

The Wardlaw Defendants seek dismissal of the Wysocki Parents' Title VI claim on several grounds, arguing: (1) that the Wysocki Parents do not have standing to bring a claim; (2) that Plaintiffs fail to allege that the Wardlaw Defendants have received federal funds requiring them to comply with Title VI; and (3) that the Wysocki Parents fail to allege that the Wardlaw Defendants took any action towards them because of their race or national origin. Wardlaw Mot. at 13-15.

1. Standing

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. One element of this case-or-controversy requirement is that Plaintiffs, as the party invoking federal court jurisdiction, must establish that they have standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To satisfy Article III's standing requirements, Plaintiffs must "clearly . . . allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to Defendants' challenged conduct, and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

The Wardlaw Defendants argue, and the Court agrees, that the Wysocki Parents fail to allege in their complaint that they have suffered an "injury in fact" as a result of the Wardlaw Defendants' alleged violation of Title VI. Plaintiffs state in their Second Amended Complaint that the Wysocki Parents "have been injured" and have incurred "damages," but these statements are conclusory. *See, e.g.*, SAC ¶¶ 101-02.

In their brief in opposition, Plaintiffs do not claim that the Wysocki Parents have suffered an injury in fact. Instead, they argue that they have standing by virtue of the *in loco parentis* doctrine. Opp. Br. at 9, ECF No. 56-1. Specifically, Plaintiffs assert that the Wardlaw Defendants breached the duty of care that it owed to the parents of its students while the school stood *in loco parentis*. Opp. Br. at 7. However, Plaintiffs' reliance on the doctrine is misplaced. Such assertions ring in negligence, not standing. *See Wartluft v.*

*Milton Hershey Sch. & Sch. Tr.*, 844 F. App'x 499, 504 (3d Cir. 2021) (analyzing negligence claim based on the duty of care under the *in loco parentis* doctrine). Further, "[t]he doctrine of *in loco parentis* treats school administrators as standing in the place of students' parents" where the parents cannot "protect, guide, and discipline them." *See Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038, 2046 (2021). Plaintiffs fail to cite to—and the Court has not identified—any authority suggesting that the doctrine allows parents to stand in the place of the *student* in order to assert the student's Title VI rights.

As such, because the Wysocki Parents have not established that they have suffered an "injury in fact" as a result of the Wardlaw Defendants' alleged violation of Title VI, they have not sufficiently alleged that they have standing to bring their own claims under the statute. *See Webb v. Susquehanna Twp. Sch. Dist.*, 93 F. Supp. 3d 343, 349 (M.D. Pa. 2015) (dismissing a Title VI claim brought by a mother and holding that her assertion that she suffered an "injury in fact" as a result of the defendants' Title VI violations against her son by virtue of being his parent failed to satisfy Article III standing).

### 2. Failure to State a Claim

However, even if the Wysocki Parents had adequately alleged that they have Article III standing to bring a Title VI claim, their claims would still fail because Plaintiffs—including Isabella—have not sufficiently pleaded either of the elements required to establish a cause of action under Title VI.

"Title VI prohibits intentional discrimination based on race in any program that receives federal funding." *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 179 (3d Cir. 2016) (first citing 42 U.S.C. § 2000d; and then citing *Alexander v. Sandoval*, 532 U.S. 275, 282-83 (2001)). As such, "[t]he two elements for establishing a cause of action pursuant to Title VI are (1) that there is racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance." *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 908 F. Supp. 2d 597, 615 (M.D. Pa. 2012).

#### i. Federal Funding

The Wardlaw Defendants argue that Plaintiffs have not demonstrated that the Wardlaw Defendants have received federal funds requiring them to comply with Title VI. Wardlaw Mot. at 13. In their brief in opposition, Plaintiffs assert that the Wardlaw Defendants are subject to Title VI because New Jersey state law defines a "nonpublic school" partly as an institution that complies with the requirements of Title VI.[5] Opp. Br.

---

[5] Plaintiffs cite to N.J.S.A. 18A:46-19.2(b) in support of this argument. However, this statute appears to be inapposite because it relates to "Remedial Services for Children with Disabilities in Nonpublic Schools." However, the Court notes that a more applicable definition may be found under the New Jersey

7

at 8-9. While Plaintiffs have alleged that the Wardlaw Defendants are required to comply with Title VI under New Jersey state law, they fail to allege that the Wardlaw Defendants *actually received* federal funds. As such, Plaintiffs "have failed to establish an element essential to their case[.]" *Choi v. D'Appolonia*, No. CV 06-1514, 2007 WL 9782908, at *12 (W.D. Pa. Oct. 15, 2007) (collecting cases and dismissing Title VI claims where plaintiffs failed to allege that any of the defendants received federal funds); *see also Dasrath v. Cont'l Airlines, Inc.*, 228 F. Supp. 2d 531, 539 n.11 (D.N.J. 2002) (listing defendant's receipt of federal funds as an element of a Title VI claim).

### ii. Racially Hostile Environment

Notwithstanding their failure to plead the first element of a Title VI claim, Plaintiffs—again, including Isabella—also fail to establish the second element: intentional discrimination.

"Pursuant to Title VI, [a plaintiff] may sue [a] School District for money damages for a failure to address a racially hostile environment." *Bridges ex rel. D.B.*, 644 F. App'x at 179. "In order to establish liability based on a hostile environment for students under Title VI, a plaintiff must demonstrate 'severe *or* pervasive' harassment based on the student's race and 'deliberate indifference to known acts of harassment.'" *L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 (3d Cir. 2017) (first quoting *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017); and then quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)). "Actionable harassment deprives the victim of equal access to the school's educational opportunities and has a 'systemic effect on educational programs or activities.' The harassment must be 'severe, pervasive, and objectively offensive,' and rise above the level of 'simple acts of teasing and name-calling among school children . . . even where these comments target differences in [race].'" *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011) (quoting *Davis*, 526 U.S. at 652-53).

In order to move forward with their Title VI claim, Plaintiffs "must raise at least an inference of discrimination[.]" *Bridges*, 644 F. App'x at 179. Here, Plaintiffs allege that the Wardlaw Defendants "tolerated and failed to stop and discipline" students that created an organization based on race who were "instrumental" in bullying and harassing Isabella and sabotaging her college acceptance and scholarship. SAC ¶ 100. In their Second Amended Complaint, Plaintiffs identify this group by citing to an exhibit that shows an email from an individual at Wardlaw, Taliyah Williams, inviting the Wardlaw Classes of 2021, 2022, 2023, and 2024 to join the Black Student Alliance. SAC ¶ 21; SAC Ex. 8. The email states that since the Black Student Alliance "is a race-based affinity group, only those with this particular identity are invited to join." SAC Ex. 8. However, Plaintiffs fail to

---

Administrative Code, N.J.A.C. 6A:9-2.1. Plaintiffs also attach a list of regulations generally applicable to nonpublic schools, but do not indicate which, if any, are relevant here. SAC ¶ 100; SAC Ex. 19.

assert how Wardlaw's Black Student Alliance had any relation to or involvement in the alleged bullying and harassment of Isabella. No named Defendants are alleged to be members of the group, and there are no assertions that Isabella tried to join or otherwise interacted with the group.[6]

Throughout the Second Amended Complaint, Plaintiffs allege five main harassment incidents committed by students against Isabella: (1) Defendant Nadia Valcourt's ("Valcourt") email to Wagner on January 3, 2021 attaching the video of Isabella using the racial epithet, SAC ¶ 12(d); (2) Defendant Austin Forsythe's ("Forsythe") posts on Instagram under an account named "Wardlaw Uncensored" on January 6, 2021 depicting several images and illustrations of one White woman among several Black men and tagging a TikTok account named "BellaWycocki" in the caption, SAC ¶ 12(a)-(b), Ex. 1; (3) Forsythe's post on TikTok under the "BellaWycocki" account on January 6, 2021 of the same video of Isabella that was sent to Wagner, SAC ¶ 12(c); (4) Mr. Forsythe's post on Snapchat on May 13, 2021 of a photograph of a Black student with a caption urging students to vote for both the student in the photograph and Isabella for a "dynamic duo," SAC ¶ 32, Ex. 12; and (5) the vandalization of Isabella's graduation sign after someone tried to pull it out of the ground, SAC ¶ 69.

Of these five incidents, Plaintiffs have only alleged that two of them—Forsythe's Instagram posts on January 6, 2021 under the "Wardlaw Uncensored" account and his Snapchat post on May 13, 2021—were based on Isabella's race. *See* SAC ¶ 32 (alleging that the posts were "racist").[7] Viewed in the light most favorable to Plaintiffs, these two posts by themselves—which were posted four months apart—do "not allege harassment that is so severe or pervasive as to have effectively denied Plaintiff equal access to educational resources or opportunities at [Wardlaw]." *Williams v. Pennridge Sch. Dist.*, No. CV 15-4163, 2016 WL 6432906, at *5 (E.D. Pa. Oct. 31, 2016).

Plaintiffs fail to allege enough facts regarding the remaining three incidents to support an inference of discrimination. While Valcourt's email to Wagner College states that she has "endured racism . . . at the hands of Bella Wysocki," nothing suggests, and

---

[6] To the extent Plaintiffs attempt to plead facts that would support an inference of discrimination under a disparate treatment theory, their claim fails because they have not alleged that Isabella was treated differently from a similarly situated person who is not a member of the protected class. *See, e.g., Davis v. Mgmt.*, No. 219CV18301, 2022 WL 3227133, at *2 (D.N.J. Aug. 10, 2022) (quoting *Osei v. La Salle Univ.*, 493 F. App'x 292, 295-96 (3d Cir. 2012)) ("For the purposes of alleging intentional discrimination [under Title VI], the Third Circuit explained a plaintiff must 'plead facts that would support an inference of discrimination' and must 'allege that he was treated differently from similarly situated [persons] who are not members of the protected class.'").

[7] The Second Amended Complaint does not include a description of the content of these posts. However, Plaintiffs have attached screenshots of the posts to the complaint as Exhibits 1 and 12, respectively, and have referenced them therein. SAC ¶ 12(a), 32.

9

Plaintiffs do not allege, that Valcourt sent the video to harass Isabella because of her race. SAC ¶ 12(d), Ex. 3; *See B.W. by next friends M.W. v. Austin Indep. Sch. Dist.*, No. 22-50158, 2023 WL 128948, at *6 (5th Cir. Jan. 9, 2023) (holding that plaintiff being repeatedly called racist, among other names, did not raise an inference of racial animus under Title VI at the motion to dismiss stage). Similarly, Plaintiffs do not assert or raise an inference that Forsythe posted the video on TikTok, or that someone attempted to pull Isabella's graduation sign out of the ground, because of her race.

As such, Plaintiffs have not pleaded enough facts to demonstrate "severe or pervasive" harassment based on Isabella's race and cannot establish liability under a racially hostile environment Title VI claim. Having so held, the Court will not address whether Plaintiffs have adequately pleaded the second prong of the racially hostile environment inquiry, namely that the Wardlaw Defendants were "deliberate[ly] indifferen[t]" to known acts of harassment.

Accordingly, the Wysocki Parents have not sufficiently established Article III standing to bring their Title VI claim, have failed to allege that the Wardlaw Defendants received federal funding requiring their compliance with Title VI, and have failed to raise an inference of discrimination. Even though the Wardlaw Defendants challenge only the Wysocki Parents' claims, the Court also finds that for the same reasons discussed *supra* regarding the Wysocki Parents' claims, Isabella's Title VI claim suffers from two of the same critical deficiencies: (1) failure to allege that the Wardlaw Defendants received federal funding; and (2) failure to raise an inference of discrimination. Consequently, Count IV of the Second Amended Complaint is **DISMISSED WITH PREJDUICE** as to all Plaintiffs, as granting further leave to amend would be futile. *See, e.g., Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980) ("[F]or a court to grant judgment on the pleadings, *sua sponte*, is not error. The district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action.").

### B. Supplemental Jurisdiction

Having dismissed the sole federal claim asserted in this matter, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claims. 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction[.]"). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)

10

Judicial economy is served by declining supplemental jurisdiction here because the Court has not yet reached the merits of Plaintiffs' claims. Further, while discovery has begun in this case, fairness and convenience are not severely impacted because any evidence already obtained can be used to pursue their state law claims in state court. *See Annulli v. Panikkar*, 200 F.3d 189, 202-03 (3d Cir. 1999) (affirming district court's decision to not exercise pendent jurisdiction despite the fact that Plaintiff had already "spent a great deal of time engaged in discovery" and noting that the "decision [to decline pendent jurisdiction] is left to the sound discretion of the district court"), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000). Additionally, comity favors allowing the state court to hear Plaintiffs' seven state law claims, as a New Jersey court may be better suited to determine the merit of these claims "in light of the real life impact it might have on the school districts of New Jersey[.]" *Rothman v. City of Northfield*, 716 F. Supp. 2d 369, 375 (D.N.J. 2010). The Court is cognizant that there are motions currently pending as to Plaintiffs' state law claims, over which the Court declines to exercise jurisdiction. These motions will be addressed in the state court proceedings in due course.

## V.    CONCLUSION

For all the foregoing reasons, the Wardlaw Defendants' 12(c) motion for judgment on the pleadings, ECF No. 53, is **GRANTED IN PART** as to Plaintiffs' federal claim and will be addressed by the state court as to the state law claims.

Count IV of Plaintiffs' Second Amended Complaint is **DISMISSED WITH PREJUDICE** and the matter is **REMANDED** to the Superior Court of New Jersey, Law Division, Union County.

Wagner's Rule 12(b)(6) motion to dismiss, ECF No. 45, the Wardlaw Defendants' other Rule 12(c) motion for judgment on the pleadings, ECF No. 49, and Forsythe's Rule 12(c) motion for judgment on the pleadings, ECF No. 54, will be addressed by the state court.

An appropriate Order accompanies this Opinion.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: March 30, 2023

11